DOUGHERTY AND MOSS LUMBER COMPANY, v. ISIDORE ROTHBAUM, EDWARD S. DOUGLAS and EMPIRE TRUST COMPANY (impleaded with C. E. Leslie), Appellants.

Kansas City Court of Appeals, May 1, 1911.

MECHANICS' LIENS: Intentional Failure to File True Account: Loss of Lien. Where it is shown that under the direction of plaintiff's manager, the contractor was given a credit to which he was justly entitled, and that, for some reason, wholly unexplained, plaintiff intentionally omitted to enter this credit in its lien account, the motive that actuated plaintiff was immaterial, but plaintiff's lien was destroyed by its intentional failure to file a statement containing "a just and true account," as provided for in section 8217, R. S. 1909.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman*, Judge.

REVERSED AND REMANDED (*with directions*).

*Vinton Pike* and *B. M. Achtenberg* for appellants.

*Vories & Vories* for respondent.

JOHNSON, J.—Action to enforce a mechanic's lien prosecuted by a sub-contractor against the original contractor, the owner of the premises and the trustee and beneficiary in a deed of trust on the property. A jury was waived and after hearing the evidence the court rendered personal judgment for the plaintiff against the contractor in the amount claimed in the petition, less a credit of $57.45, and declared said judgment a special lien on the property described in the petition. The defendants, with the exception of the contractor, appealed.

Several objections are urged against the judgment. One of these, we are all agreed, is well founded, and compels a reversal of that part of the judgment declaring a lien on the property of the appealing defendants. The other objections need not be considered and we shall express no opinion concerning them.

The plaintiff corporation is engaged in the lumber business in St. Joseph and J. B. Moss is its managing officer. It sold lumber and building material to defendant Leslie, a contractor and builder, for a residence that Leslie was building for Rothbaum, the owner of the premises on which a lien is claimed. The total amount of the material furnished by plaintiff for the building was $2079.79, and plaintiff received a cash payment of $500 from Leslie on this account and the payment was duly credited on the books of plaintiff. In the lien paper and petition, plaintiff allowed no other credits and sought to enforce a lien for $1579.79, together with interest from May 1, 1910, the date the account accrued. In addition to a separate account kept by plaintiff on its books for the material furnished

Dougherty v. Rothbaum.

by Leslie for the Rothbaum building, plaintiff had other separate accounts with Leslie, among them, one relating to his individual purchases which was called the "shop account." On July 14, 1910, Leslie's shop account was credited with $57.45 as follows: "7-14-10. C. E. Leslie 5 per cent discount on $1149.08, Ninth and Locust street job, credited to his shop account per order J. B. Moss, $57.45." The job referred to was Rothbaum's residence. This entry was made after the date of the filing of the mechanic's lien (July 5, 1910) and before the institution of this suit (August 26, 1910), no entry of the credit was made on the separate account of Leslie for material furnished for and used in the Rothbaum building and, as stated, no such credit was given in the petition.

On cross-examination, Mr. Moss testified about this discount, as follows: "Q. Now was there any agreement at the time this lumber was sold to give a discount? A. Yes, that was the agreement to give them a five per cent discount.

"Q. Was any discount given? A. Well, it was intended to be given, if the bill was promptly paid; if the bill is promptly paid we allow a discount; if the bill is not promptly paid, we generally—

"Q. I asked if any discount was given? A. I think it was credited up on the book and then when we found that the bill was not paid, we generally charge an account—

"Q. What do you mean by credited up? A. We supposed that the bill was going to be paid; had the account made up; and we took the discount that we was to allow off and gave him what the balance was as the amount to be paid; but when the bill was not paid —well, we did not propose to take the discount off and have to bring suit and go through litigation after allowing the discount. We do not generally allow discount unless it is paid because it might never be paid.

"Q.  Now, after the suit was brought, you rendered Leslie an account; did you give him that credit on that account?  A.  I don't know; the bookkeeper made the account up and I don't know; he is here and I don't know just what he did with it; I don't remember.

"Q.  You don't know whether it was given or not? A.  He has charge of the books and I don't know what he did with it, but the intention is not to give credit unless the bill is paid."

On redirect examination the witness testified:

"Q.  Are you speaking of a discount for cash?  A. Yes, the discount that we give him if the bill—expecting the bill to be promptly paid."

In allowing this discount in the judgment rendered the learned circuit judge, sitting as the trier of fact, must have rejected plaintiff's explanation that the discount was intended and agreed to be given only for the prompt payment of the account and not in case plaintiff should be compelled to resort to the courts for the collection of the account and also rejected the claim of plaintiff that the credit to Leslie's "shop account" was mistakenly entered by the bookkeeper.  This conclusion of fact will not be disturbed since we find it is strongly supported by evidence tending to show that the credit was given after Leslie's failure to pay the account promptly and even after plaintiff had filed its lien and that the entry was made by the express order of plaintiff's managing officer.  On this hypothesis the inference is conclusive that the failure of plaintiff to enter a similar credit on the lien account was intentional and not the result of a mere oversight or inadvertence.

Plaintiff contends that in rendering judgment enforcing the lien the circuit judge must have found as a fact that the omission was unintentional but that conclusion finds no support in the evidence and is at variance with the finding that the lien account is entitled to receive the benefit of the discount.  With the explanation of plaintiff discredited, as it was by the trier

of fact, the evidence is entirely devoid of any reason or excuse for the failure to give the lien account credit for the discount. All that is shown is that under the direction of plaintiff's manager, the contractor was given a credit to which he was justly entitled and that for some reason, wholly unexplained, it was not entered in the lien account. No other reasonable conclusion can be drawn from such facts than that failure to give the proper credit was intentional.

The motive that actuated plaintiff is immaterial, and we do not find it necessary to express an opinion on the suggestion of defendants that plaintiff's purpose was to enable the contractor to pay his individual debt at the expense of another. The statute (sec. 8217, Rev. Stat. 1909) requires the lien statement to contain "a just and true account of the demand" "and after all just credits have been given" and the only limitation imposed on the scope of this requirement is found in section 8823, which preserves the lien in cases where the claimant "may have *unintentionally* failed to enter in his account filed the full amount of credits to which the debtor may be entitled."

Plaintiff has not succeeded in bringing the cause within the exception and has no lien for the reason that its lien statement did not contain a just and true account of its demand within the meaning and true intent of the lien statutes. [Hoffman v. Walton, 36 Mo. 613; Kling v. Railway, 7 Mo. App. 410; Uthoff v. Gerhard, 42 Mo. App. 256.]

In Uthoff v. Gerhard, the plaintiff filed a lien for $1812.95 and intentionally omitted giving a just credit of $152.10. The St. Louis Court of Appeals, speaking through Thompson, J., said:

"It appeared without dispute that the plaintiffs knowingly included in their account $152.10 more than was due to them at all from their principal contractors.

"We do not intend to go into the reasons given by the plaintiffs for doing this, nor do we intend to inti-

mate that they intended to cheat anybody. It is suffi-
cient for us to see from the undisputed evidence that
they included in the account filed as the basis of their
claim of lien this large amount, not as the result of
inadvertence or mistake, but knowing that it was not
due them from the principal contractors. The law does
not allow this to be done."

On motion for rehearing, ROMBAUER, P. J., said, in
part:

"By *just credits*, as that term is used in the statute,
when applied to the lien of a sub-contractor, credits are
meant, to which the contractor is entitled in his account
with the sub-contractor. The contractor is the party
primarily liable and not the building. [Wibbing v.
Powers, 25 Mo. 599; Ashburn v. Ayers, 28 Mo. 75;
Westcott v. Bridewell, 40 Mo. 146.] The contractor
is a necessary party, and the proceeding against him
is *in personam* and not *in rem*. He may avail himself,
although the suit be a lien suit, of all credits, offsets
and counterclaims, which he has against the sub-
contractor, and, if he succeeds in establishing them, the
owner will get the benefit, because the judgment against
the property can never exceed the judgment against the
contractor. . . . Where the contractor has paid the
sub-contractor in whole or in part for the work and
material, for which the sub-contractor seeks to enforce
a lien, the owner can always show this in reduction
of the lien claim, where the omission of the credit is
*unintentional*, and, for the purpose of defeating the
lien, if the omission of the credit is intentional, and he
may do so regardless of whether the contractor defends
or not."

The doctrine of this case was not altered by what
was said by the same court in the later case of Hydraulic
Press Brick Co. v. McTaggart, 76 Mo. App. 347, relied
only plaintiff. Indeed, it was recognized in the fol-
lowing language: "The true purpose of the statute is
to exact a substantial compliance with its requirements

and this is had whenever it appears that the account filed has not been *knowingly, intentionally,* or fraudulently falsified."

The statute does not intend that the lien claimant shall be punished by the loss of his entire lien for a mere mistake, neither does it intend to allow a materialman to give a secret commission to the contractor by means of a discount or rebate to be withheld from the owner in the enforcement of a mechanic's lien against his property. Plaintiff's lien was destroyed by its intentional failure to file a statement containing a just and true account.

The judgment is reversed and the cause remanded with directions to enter judgment in accordance with the views expressed. All concur.