P. C. DANFORTH, et al., Appellants, v B. F. FOSTER et al., Respondents.

Springfield Court of Appeals, July 20, 1911.

1. **INJUNCTIONS: Threatened Injury: Transfer of Church Property: Equity: Question of Fact.** An injunction proceeding was instituted by some of the members of a church against other members to prevent them from transferring the church property to another denomination, and to prevent the defendants from worshiping God in the church according to the doctrines of the other denomination. The defendants offered testimony, which satisfied the trial judge that it was not their intention to transfer the property unless they had the legal right to do so, and then only in case they were unable to secure a proper minister for their church and that such a minister had been secured and they had given up all idea of transferring the church property or using it for any form of worship other than in accordance with the doctrines of the church to which it belonged. The evidence was oral and conflicting. *Held*, that the finding of the trial court on the question of fact should be deferred to and that plaintiff's bill was properly dismissed.

Danforth v. Foster.

2. APPEAL AND ERROR: Equity: Deferring to Finding of Trial Court on Facts. In equity cases where the evidence on all controverted points is oral and the weight and credit to be given to the same depends largely on the character, appearance, fairness and intelligence of the different witnesses who appeared in person before the trial judge, he is in a much better position to determine the controverted facts than is the appellate court and under such circumstances the finding of the trial court on questions of fact will be largely deferred to.

3. INJUNCTION: Threatened Injury: Probability of Injury. The rule is well-established that plaintiffs, in order to obtain an injunction must show that the acts they complained of and against which they seek protection, are not only threatened but will in all probability be committed to their injury unless prevented.

4. VOLUNTARY ASSOCIATIONS: Church Regulations: Expelling Members. Where the laws of the church provides for charges, notice and hearing before members shall be suspended or their names stricken from the roll, a "blanket order" attempting to remove a large per cent of the church membership without charges or a hearing and without even mentioning their names will not be effective.

Appeal from Greene Circuit Court.—*Hon. Alfred Page,* Judge.

AFFIRMED.

*Wright Brothers* for appellants.

(1) Defendants openly avowed their severance, which was a withdrawal from the lawful organization of the church and the forfeiture of any rights to continued membership and control of the property. Brundage v. Dearorf, 55 Fed. 839; Boyles v. Roberts, 222 Mo. 654. (2) The distinction between the Cumberland Presbyterian Church and the Presbyterian Church, U. S. A. is vital. Boyles v. Roberts, 222 Mo. 654. (3) Adherence to a particular body requires adherence to both creed and polity; abandon or repudiate either is to abandon or secede from the body whose authority is thus disregarded. Kruker v. Shiver, 163 Pa. St. 534.

*E. D. Merritt* for respondents.

(1) The evidence on all controverted points was oral. The weight to be attached to this evidence depends largely on the character, experience, fairness and intelligence of the witnesses. This evidence was patiently heard by an experienced and judicious chancellor. He was in a much more favorable position to wisely determine its preponderance than any appellate court could be. There was no suggestion or semblance of prejudice or unfairness on the part of the chancellor who tried the case. No declarations of law were asked, given or refused. Following a long line of precedents in this State, this court will under the above state of facts, largely defer to the opinion of the chancellor who tried the case. Carter v. Dilley, 167 Mo. 571; Chance v. Jennings, 159 Mo. 560; Arn v. Arn, 81 Mo. App. 140; Chouteau v. Allen, 70 Mo. 336; Erskine v. Lowenstein, 82 Mo. 309; Chapman v. McIlwrath, 77 Mo. 43. (2) An injunction cannot be issued to allay the fears and apprehensions of plaintiffs. They must show that the acts against which they seek protection are not only threatened but will in all probability be committed to their injury, unless prevented by injunction. Lester Co. v. St. Louis, 169 Mo. 227; Schubach v. McDonald, 179 Mo. 182; Business Men's League v. Waddill. 143 Mo. 495; Aetna Iron Works v. Transit Co., 95 Mo. App. 565.

GRAY, J.—September 12, 1910, the plaintiffs instituted this suit in the Greene county circuit court. The petition recites that about the year 1810, there was organized the Cumberland Presbyterian Church, and thereafter the Christian colored people of the United States of America formed themselves in a body known as the Cumberland Presbyterian Church, colored, and those who became members of said church were adherents to the doctrines taught by the Cumberland Presbyterian Church; that the Cumberland Presbyte-

rian Church, colored, at all times had its governing
bodies, to-wit:   The General Assembly, the Synods,
the Presbyteries and the Sessions; that many years
ago a congregation of the Cumberland Presbyterian
Church, colored, was organized in the city of Spring-
field, Missouri, and was and is known as the First
Cumberland Presbyterian Church, colored, of Spring-
field, that many Christian people of the colored race
are members thereof; that said members are adher-
ents to the religious doctrines of the Cumberland Pres-
byterian Church, colored; that said doctrines are in
many respects, different from the doctrines of any
other Presbyterian Church; that said colored Presby-
terian Church was incorporated several years ago, and
is the owner of certain real estate in Springfield, and
has erected on said property a large and commodious
church edifice and other buildings for the use of the
church and its members; that on the 7th day of Au-
gust, 1910, the defendants and those interested in com-
mon with them, renounced the religious doctrines of
the Cumberland Presbyterian Church, colored, and
their allegiance to said church, and declared them-
selves no longer members of said church, but declared
themselves to be members of the Presbyterian Church
in the United States of America, a separate and dis-
tinct religious church organization; that by reason of
said action, the defendants declare themselves no
longer members of said Presbyterian Church, colored,
and are not now members of the said church; that the
plaintiffs and their said associates have remained in
the Cumberland Presbyterian Church, colored, and are
now the only true and lawful beneficiaries of said
property, and are entitled to the exclusive possession,
use and control of said ownership, and that defendants
and their associates have lost all their rights and priv-
ileges in said church, and to its said property; that
the said defendants and their associates continue to

hold religious services in said church, although deny-ing that they are holding such services as Cumberland Presbyterians, and said defendants are denying to plaintiffs and their said associates, the right to oc-cupy said church building and property as Cumber-land Presbyterians, and are denying them the right to worship in said church building as Cumberland Presbyterians, and are denying the plaintiffs and their associates the right to use and occupy the church build-ing as a congregation of Cumberland Presbyterians, and that the defendants and their associates claim to be the owners of said property as Presbyterians.

The petition then concludes as follows: "Where-fore inasmuch as plaintiffs and their said associates have no adequate remedy at law, they pray for an order of injunction to issue out of this court directed to the defendants and those interested in common with them, enjoining them and restraining them and each of them from using and occupying said land and church building and other buildings on said land, and from holding services of any kind in said church building or on said premises, and from interfering with or molesting the plaintiffs, and their said asso-ciates who adhere to the Cumberland Presbyterian Church, colored, and the religious doctrines thereof, in the use, enjoyment, possession and exclusive control of said land and the church building and other build-ings on said land and from delivering the possession of said land and building to any other person or persons."

The answer admitted the allegations of the pe-tition in regard to the organization of the Cumberland Presbyterian Church, colored, and also the local church, and admitted that said church was the owner of the property described in the plaintiffs' petition, and denied that defendants or any of them had any thought, purpose or intent of withdrawing from said Cumberland Presbyterian Church, colored, and affirm-

atively alleged that defendants at all times mentioned in plaintiffs' petition, were members of said Cumberland Presbyterian Church, colored, and with no present thought or purpose of withdrawing from said church.

The cause was tried on the 23d day of September, resulting in a dismissal of plaintiffs' bill, and from such judgment, they have appealed to this court.

The Cumberland Presbyterian Church, colored, is a separate organization from the Cumberland Presbyterian Church, and was in no wise involved in the contest between the Cumberland Presbyterian Church and the Presbyterian Church in the United States of America, considered by the Supreme Court in Boyles v. Roberts, 222 Mo. 613, 121 S. W. 805.

The evidence on all controverted points was oral, and therefore, it is apparent that the weight and credit to be given to the same depends largely on the character, appearance, fairness and intelligence of the different witnesses. All of the witnesses appeared in person before the trial judge, and he was in a much better position to determine the controverted facts than this court is with nothing but a copy of the evidence before us. Under such circumstances it is the established rule of this and the other appellate courts to defer largely to the opinion of the Chancellor on questions of fact. [Railroad v. Yankee, 140 Mo. App. 276, 124 S. W. 18; Huffman v. Huffman, 217 Mo. 182, 117 S. W. 1; Walker v. Dobbins, 133 S. W. 387; Jones v. Thomas, 218 Mo. l. c. 540, 117 S. W. 1177.]

It seems to us that this is a case in which the appellate court should give this rule its full force. The cause was tried before a judge who lived in Springfield, and who undoubtedly was personally acquainted with many of the witnesses, and had full opportunity to observe their conduct on the witness stand.

While the testimony was conflicting, there was much creditable evidence tending to prove that the

plaintiffs, and the defendants, on the 7th day of August, 1910, and for several years prior thereto, were members of the First Cumberland Presbyterian Church, colored, of Springfield; that on said 7th day of August, the defendant, Foster, preached his farewell sermon as pastor for the church. Rev. Foster had received a call from Washington, D. C., and had announced that he would preach his farewell sermon that day. The church was behind with the salary of the minister, and on that day held a meeting of the congregation to raise money to pay this debt. At this meeting the question of securing a pastor to take the place of Rev. Foster, was discussed. The members of the congregation agreed that the membership of the church was such that a minister with a good education was required, and the evidence shows that it was almost impossible to secure the services of a Cumberland Presbyterian minister for the church. The Presbyterian Church, United States of America, was better supplied with ministers capable of taking charge of such a church, and the defendants were of the opinion that it was for the best interest of the church to affiliate with that church. At the meeting a motion was made that the church unite with the Presbyterian Church of the United States of America. This motion was either defeated, or if carried, reconsidered and by a vote of forty-two to seven, a committee was appointed to ascertain what was necessary to make the change.

The Presbytery of the Cumberland Church having authority over the Springfield Church, was known as the Kansouri Cumberland Presbytery, and to that Presbytery the committee above mentioned made an application stating that the First Cumberland Presbyterian Church, colored, of Springfield, had by a large majority voted to dissolve its relations with the Cumberland Church, and was seeking fellowship with the Presbyterian Church of the United States of

America, and resquesting a letter of dismissal and authorizing the union. The Kansouri Cumberland Presbytery refused the request.

The defendants consulted an attorney and were advised that they could not, against the objections of the plaintiffs, convey the church property to the Presbyterian Church in the United States of America, and that they could not use the church against the objections of the plaintiffs, as a place of worship for any other church than the Cumberland Presbyterian Church, colored.

It further appeared from the defendants' testimony, that the sole purpose of seeking a home in the Presbyterian Church in the United States of America, was to secure a qualified minister for the church; that about the time the suit was commenced, the services of such a minister were secured, and this fact, and the other reason just stated, caused the defendants to abandon their purpose to unite with the Presbyterian Church in the United States of America, and that at the time of the trial they had no intention of doing any of the things complained of in plaintiffs' petition.

There is no evidence in the record tending to prove that the defendants or any of them, intended to do any legal wrong whatever. The right of the Cumberland Presbyterian Church to unite with the Presbyterian Church in the United States of America, has been a question that has occupied the time and attention of the church and courts for sometime. The Judges of the supreme courts of the different states have differed as to the legal rights of one branch of the church to unite with the other, and to transfer its property to such other, and it is not strange, when the question came up in the First Cumberland Presbyterian Church, colored, of Springfield, the rights of the parties were not fully known. The defendants, being in the majority, and believing, on account thereof, they had the right to determine what should be done

with the church property, and believing it was for the best interest of the church to unite with the Presbyterian Church in the United States of America, in order to secure an educated pastor for the church, intended to make such change if the same could be legally done, provided, a competent, educated Cumberland Presbyterian minister could not be secured. With this in view, a committee was appointed to take the preliminary steps and to ascertain the legal rights of the parties. The authority of the Cumberland Presbyterian Church, colored, refused to endorse the plan, and the defendants also learned that the property of the church could not be conveyed over the objections of any of the members of the Cumberland Presbyterian Church, colored, and the services of a Cumberland Presbyterian minister having been secured, the proposed union was abandoned, and at the time of the trial the defendants were worshipping at the church in accordance with the doctrine of the Cumberland Presbyterian Church, colored, and the minister in charge was of that denomination and preaching its doctrine to the congregation.

We say there was testimony tending to prove the above facts, and which the trial court must have believed in order to have rendered the judgment appealed from. As above stated, there was testimony to the contrary, but under the authorities, we do not feel that we are justified in disturbing the findings of the trial judge.

The plaintiffs claim the defendants and all of the other members who voted to unite with the Presbyterian Church in the United States of America, or who voted to appoint the committee with that end in view, were suspended or removed from the church, and therefore, have no right to a voice, and that they are entitled to an injunction restraining such persons from interfering with the management of the church's affairs.

The laws of the church were offered in evidence, and by them the Church Session is given the authority to suspend members. The Session consists of the minister in charge and two or more ruling elders of a particular church, and in case of the absence of the minister in charge, and in a vacant church, ruling elders alone, constitute the church session. A majority of the church session is necessary to constitute a quorum.

At the time it is claimed the defendants and their associates were removed, Rev. Foster was the minister in charge, and there were five elders. Foster was not a Cumberland Presbyterian, and, therefore, it is not clear whether he was a member of the church session. He was occupying the position of minister or pastor for the time being, because the church had.been unable to secure a Cumberland Presbyterian minister. But it is not necessary to decide this point. Without him, in order to constitute a quorum, it was necessary that three elders be present. The church record recites that on the 15th day of September, 1910 (three days after.this suit was instituted) ''Gibson Chapel Session met in regular meeting and opened with prayer by Peter Hancock. Roll called and the following officers present. Peter Hancock absent Robert Cain, Wm. Smith on motion of Wm. Smith that Rev. P. C. Danforth act as moderator motion carried.'' And then follows an order purporting to remove the defendants and their associates from the church. This record does not show that more than two members were present, and therefore, fails to show a quorum.

In addition to the above defect appearing on the face of the record, the motion was a ''Blanket Order,'' attempting to remove a large per cent of the church membership without charges, hearing, or even mentioning their names. The laws of the church provide for charges, notice and a hearing, except in certain cases, and the alleged record of removal is absolutely

silent as to the cause of removal of any of the members.

The rule is well established that plaintiffs, in or-order to obtain an injunction, must show the acts they complain of, and against which they seek protection, are not only threatened, but will in all probability, be committed to their injury, unless prevented. [Lester Real Estate Co. v. City of St. Louis, 169 Mo. 227, 69 S. W. 300; Aetna Iron Works v. Transit Co., 95 Mo. App. 565, 69 S. W. 618.]

If the defendants had appeared in court and claimed they had the right, being in the majority, to transfer the church property, and were intending to do so, an entirely different question would be presented. But when they offered testimony which satisfied the trial judge that it was not their intention to transfer the property unless they had the legal right to do so, and then only in case they were unable to secure a proper minister for their church, and that such a minister had been secured, and that they had given up all idea of transferring the church property or using it for any other purpose than to worship God in accordance with the doctrines of the Cumberland Presbyterian Church, colored, the court committed no error in dismissing plaintiff's bill, and the judgment, therefore, will be affirmed.

All concur.