# CENTER CREEK MINING COMPANY, Respondent, v. T. F. COYNE et al., Appellants.

**Springfield Court of Appeals, May 6, 1912.**

1. **MECHANICS' LIENS: Releasing Right to Lien: Setting Aside Judgment.** In an action in equity to set aside and cancel a mechanic's lien judgment obtained by the defendants against the improvements which had become a part of plaintiff's real estate, the judgment having been obtained against plaintiff's tenant, it appeared that plaintiff claimed title through the foreclosure of a mortgage given by the tenant, the mortgage having been given to secure a loan. It also appeared that the defendants had furnished the plaintiff with a statement of their account against the tenant and agreed that if plaintiff would make the loan, a part of which was to satisfy defendants' claim, that defendants would accept two promissory notes in addition to the cash payment in full satisfaction of the indebtedness and claim against the property. *Held*, that under the evidence the defendants had released their right to the lien when the loan was made by the plaintiff under the agreement with them, and the plaintiff not having been made a party to the lien judgment would not be effected by it and the trial court properly set the same aside, so far as it effected plaintiff's rights.

2. **DEBTOR AND CREDITOR: Offer of Settlement: Acceptance in Entirety: Equity.** Where a sum of money and promissory notes are left by the debtor with one member of a creditor firm with the understanding that they were to be received in full settlement of an account against the debtor, it being understood that the money and notes were left for the approval of another member of the firm, and the firm appropriates the money and credits the same on the debtor's account and after the notes are past due, attempts to repudiate the transaction, so far as the settlement and notes are concerned, a court of equity will not permit such repudiation, for it was the duty of the creditor to either receive the notes and money tendered in settlement of the account, for which they were offered, or reject the offer in its entirety.

3. **CONTRACTS: Offer and Acceptance: Accepting in Part: Equity.** Equity will not allow parties to appropriate the part of a transaction that is favorable to them and reject that which is not, thereby assuming the inconsistent position of affirming a contract in part and disaffirming it in part.

4. APPEAL AND ERROR: Action in Equity: Reviewing Evidence. While an appellate court is authorized to review the evidence in an equity case, yet in determining the weight to be attached to the testimony of the witnesses, where it is oral and conflicting, deference will be given to the opinion of the trial court, who had the opportunity of seeing the witnesses face to face and observing them while they were testifying.

5. MECHANICS' LIENS: Release: Reviving Lien. A party entitled to a mechanic's lien may waive, discharge or release the same and having done so for a proper consideration, he cannot afterwards revive the lien.

6. ———: Filing True Account: Giving Proper Credits. The law granting liens to mechanics and materialmen requires that they shall file a just and true account of the demands due them after all just credits have been given and unless the account is correct and the proper credits have been given in compliance with the statute, a party cannot enforce his lien upon the property of the owner of the building, but the rights of the lienor are not lost where he unintentionally fails to enter in his account the full amount of the credits to which his debtor is entitled.

7. ———: Extraordinary Remedy: Complying with Statute. The enforcement of a mechanic's lien is a special and extraordinary remedy or privilege given by the law, and one attempting to avail himself of the advantage of such lien must fully comply with the provisions of the law conferring it.

8. CORPORATIONS: Chattel Mortgage: Defective Acknowledgment: Mortgagee's Possession of Property. A chattel mortgage of a corporation is invalid as to any person other than the parties thereto, unless possession of the mortgaged property is delivered to the mortgagee, where the acknowledgment of the president of said corporation fails to state that the president signed and sealed the instrument in behalf of said corporation, by authority of its board of trustees or directors, as required by section 2799, Revised Statutes 1909. But the mortgagee's title would be good where he takes possession as purchaser at a foreclosure sale under the mortgage.

9. LANDLORD AND TENANT: Fixtures: Purchase by Landlord: Real Property. Although as between the landlord and tenant the improvements erected by the tenant on the real estate may be personal property, yet where the landlord purchases such improvements they become by operation of law a part of the freehold and would follow its ownership as fully as if they had been constructed by the landlord in the first instance.

10. INJUNCTIONS: Equity: Removing Cloud From Title: Mechanics' Liens: Setting Aside Judgment. In action to set

aside a mechanic's lien judgment and to enjoin a sale of property thereunder, where the facts showing the invalidity of the lien were outside of the record and rested in parol and could only be shown by extrinsic evidence, equity will exercise jurisdiction to protect the real property and remove the cloud from the title resulting from such judgment.

11. MECHANICS' LIENS: Parties Defendant: Interested Parties Not Bound, When. Where a person interested in property sought to be charged with a mechanic's lien is not made a party to the proceedings, he is not bound by the judgment.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*Frank L. Forlow* and *H. S. Miller* for appellants.

(1) The rule is that where non-lienable items are included in the mechanic's lien account filed in the office of the clerk of the circuit court that if they can be easily segregated from the lienable items and if the lienor did not know at the time he filed the account that there was included in it the non-lienable items, the inclusion of such item will not vitiate the lien. Kittrell v. Hopkins, 114 Mo. App. 431. (2) Also it is held in the case of Ulrich v. Osborne, 106 Mo. App. 492, that where they are included in the lien accounts a few small items which did not go into the building, they will not in the absence of bad faith vitiate the lien especially where they are separable with the amounts from other items. (3) The acknowledgment to the chattel mortgage is defective and the record of an imperfectly acknowledged chattel mortgage imparts no notice in this suit. Selking v. Hebel, 1 Mo. App. 340; Pullis v. Pullis, 157 Mo. 565. (4) It is not necessary to make the Center Creek Mining Company a party to the mechanic's lien suit by the appellant herein against the Good Shepherd Mining Company. The question of the ownership of

the property does not arise in a mechanic's lien suit
nor in proceedings to enforce the same. If in point
of fact the Good Shepherd Mining Company had no
interest in the property the purchaser at the sheriff's
sale under the special execution would get no title but
whether he gets title or not would be a matter to be
settled in a future proceeding. Chambers v. Benoist,
25 Mo. App. 523; Cole v. Barron, 8 Mo. App. 509.
(5) The right of the appellant to its lien could not
be extinguished except by release or payment and the
release will not be binding or the lien lost if given on
conditions and the conditions not complied with.
Rockel on Mechanic's Liens, sec. 189; Albrecht v.
Lumber Co., 126 Ind. 318; Katzenbach v. Holt, 43 N.
J. Eq. 536. (6) The notes taken by the appellant
under the circumstances as shown by the record in
this case would not release the lien and the right to
enforce it. Lumber Co. v. Christophel, 62 Mo. App.
98; Brass Co. v. Boyce, 74 Mo. App. 342. (7) This
record is absolutely free from any fraud whatever in
the procuring of the mechanic's lien judgment. That
the proceeding in this case is a collateral attack on
the mechanic's lien judgment there can be no ques-
tion. Railroad v. Warden, 73 Mo. App. 117; Mur-
phy v. De France, 150 Mo. 53; Davis v. Wade, 58 Mo.
App. 641; Wyman v. Hardwick, 52 Mo. App. 621;
Bracken v. Milner, 99 Mo. App. 194; Le Mesnager v.
Variel, 144 Cal. 463, 77 Pac. 988, 103 Am. St. Rep. 91;
Davis v. Osborne, 156 Ind. 86, 59 N. E. 279; Peters
v. League, 13 Maryland 58, 71 Am. Dec. 622; Crist v.
Cosby, 11 Okla. 635, 69 Pac. 885; Wood v. Elam, 4 B.
H. C. 431.

*Bates & Stewart, Norman A. Cox* and *Hugh Dabbs*
for respondent.

(1) An acknowledgment would be unnecessary
in this case because appellants had actual knowledge

of the existence of respondent's mortgage and received $1500 out of the loan secured thereby. This mortgage is signed by the president of the Good Shepherd Mining Co., and attested by the seal of the corporation. This is sufficient. Degnan v. Thoroughman, 88 Mo. App. 62; Roth v. Wire Co., 94 Mo. App. 236; R. S. 1909, sec. 2811; Bank v. Frame, 112 Mo. 509. (2) Appellants having agreed with respondent and the Good Shepherd Mining Company to accept the $1500 and the notes in full satisfaction of its claim, for the purpose of inducing respondent to make the loan, and having received $1500 of respondent's money, are not estopped from enforcing a mechanic's lien against the property. Brick v. Sadring, 68 Mo. App. 17; Lumber Co. v. Park Assn., 64 Mo. App. 381; Bank v. Frame, 112 Mo. 513; Spence v. Renfro, 179 Mo. 421. (3) Under the mortgage and the court record, as shown by the evidence the mechanic's lien judgment obtained by appellants showed a superior lien to respondent's mortgage. Respondent not having been a party to the suit which resulted in the mechanic's lien judgment and that judgment being a fraud on its rights had a right to attack it in this proceeding. R. S. 1909, secs. 8219, 8221; Russell v. Grant, 122 Mo. 180; Fitzpatrick v. Stevens, 114 Mo. App. 502; Bank v. Davison, 40 Mo. App. 425; Sanderson v. Voelker, 51 Mo. App. 333; Wilhite v. Ferry, 66 Mo. App. 459; Clothing Co. v. Steadman, 120 Mo. App. 525. (4) While the injunction in this case is auxilliary to the suit to concel and set aside the judgment, respondent would be entitled under section 2534, Revised Statutes 1909, to maintain an original injunction against the judgment in this case as the judgment is a lien and cloud upon the title to the mill and improvements and one acre of respondent's land. R. S. 1909, sec. 2534; Russell v. Grant, 122 Mo. 175; Bassett v. Henry, 34 Mo. App. 556; Stewart v. Caldwell, 54 Mo. 539; Hanson v. Neil, 215 Mo. 283. (5) Re-

spondent is entitled to maintain this suit in equity on any one of the following grounds, fraud, equitable estoppel, cancellation and cloud on title. Williams v. Lane, 66 Mo. App. 68; Daugherty v. Rothbaum, 156 Mo. App. 219; Creamer v. Bivert, 214 Mo. 479. (6) The acceptance of the $1500 out of respondent's loan and the two notes of $500 each was all one transaction. Under the law appellants will not be permitted to accept the benefits of the transaction and repudiate the part which is not beneficial. Grooms v. Mullet, 133 Mo. App. 481; Austin v. Loring, 63 Mo. 22; Nelson v. Hirsh, 102 Mo. App. 513.

NIXON, P. J.—This was an action in equity instituted by the Center Creek Mining Company to set aside and cancel a mechanic's lien judgment obtained by the defendants, a copartnership, against the Good Shepherd Mining Company, a corporation, and restrain the collection of the same, the plaintiff claiming that said judgment was invalid and that it declared a lien and cast a cloud upon plaintiff's title. A temporary injunction was issued restraining the collection of the judgment and on final hearing was made perpetual. Defendants have appealed.

The evidence in the case tended to support the allegations of the petition which is substantially as follows (formal parts omitted):

"Plaintiff for its amended petition and cause of action states that at all times hereinafter mentioned, it was, and is now, a corporation, organized and doing business under the laws of the State of Missouri; that during said period defendants, T. F. Coyne, Ed. Foster and W. W. Davis, were, and still are, copartners engaged in the retail lumber business in Webb City, Missouri, under the name and style of the Coyne Lumber Company; that the hereinafter mentioned Good Shepherd Mining Company was also during said

period and is now a corporation organized and exist-
ing under the laws of the State of Missouri; that the
defendant Arch McDonald has been for more than
one year next preceding the date of filing this peti-
tion the duly elected, qualified and acting sheriff of
Jasper county, Missouri.

"Plaintiff states that on or about the fifteenth
day of January, 1908, the said Good Shepherd Mining
Company entered into a contract with the plaintiff
whereby it leased to the said Good Shepherd Mining
Company for a period of years for mining purposes
all of lots numbered 84, 85, 86, 87, 88, 97, 98, 99,
100, and fractional lots numbered 101, 102, 103 and
104, respectively of the Center Creek Mining Com-
pany's land, all located in the southwest quarter of
the northwest quarter of section seventeen (17),
township twenty-eight (28), range thirty-two (32),
Jasper county, Missouri; that said contract among
other things provided that said Good Shepherd Min-
ing Company would own and might remove there-
from, all fixtures and improvements placed by it on
the said lots, at the expiration or forfeiture of said
lease; that under the terms and provisions of said
lease, said Good Shepherd Mining Company con-
structed a mining concentrating plant, including main
buildings, derrick, hoppers, machinery, tramways,
office buildings, etc., on one or more of the said lots;
plaintiff further states that after the completion of
the said mining plant and on or about the first day of
August, 1908, the Good Shepherd Mining Company
could not proceed with its operations for the want of
funds; that in the building and construction of said
mining plant, building, machinery and improvements,
it had incurred a large amount of indebtedness, its
creditors being the defendant Coyne Lumber Com-
pany, a partnership composed as aforesaid; the Webb
City Foundry & Machinery Company, Manley & Lan-
dreth of Joplin, Missouri, and Putman and Bryant of

Webb City, Missouri. That at said times the claims of said creditors were for materials used for the improvements on said lease, the said creditors being entitled under the law to enforce their claims under the mechanics' lien laws for said improvements.

"Plaintiff states that on the tenth day of August, 1908, the Good Shepherd Mining Company applied to it for a loan with which to discharge its then existing indebtedness to the aforesaid creditors and to create a fund with which to continue mining operations. Plaintiff states that through its secretary and general manager it agreed with the Good Shepherd Mining Company to make a loan provided all lienable claims and debts existing and owing by said company at the time be paid off and discharged so that plaintiff's loan could be secured by a first mortgage on said mill and improvements, concentrating plant and machinery aforesaid; that thereupon the said Good Shepherd Mining Company stated to plaintiff that it could arrange with said creditors so that each would receive a part payment of their several claims in cash and take the individual note of the Good Shepherd Mining Company, with the guaranty of the president of said company, in full satisfaction and discharge of said indebtedness, so that the same would no longer be a lienable claim against said property.

"Plaintiff further states that with a view of carrying out said arrangement, A. L. Shepherd, president of the Good Shepherd Mining Company, went to the Coyne Lumber Company to ascertain the amount of the indebtedness then owing it by the Good Shepherd Mining Company, and that the Coyne Lumber Company, through T. F. Coyne, a member of said partnership, rendered to the said Shepherd for the plaintiff, a statement of its indebtedness as follows, to-wit:

" 'Webb City, Mo., July 31, 1908.
" 'The balance due to date on Good Shepherd account is twenty-five hundred ($2500) dollars.
" 'COYNE LUMBER COMPANY,
" 'By T. F. COYNE.'

"Plaintiff further states that for the purpose of carrying out said arrangement the said Good Shepherd Mining Company through its said president ascertained the indebtedness of the other above named companies.

. . . . . . . . . . . . .

"Plaintiff further states that the Coyne Lumber Company, being a partnership composed of the members hereinbefore set out, through said W. W. Davis, a member of said firm then in charge of its office and place of business, agreed with the plaintiff and the Good Shepherd Mining Company, that if fifteen hundred dollars in cash would be paid upon its account at that time, to-wit, August —, 1908, it would accept two promissory notes of said company for five hundred dollars each, guaranteed by A. L. Shepard as the president thereof, in full satisfaction, payment and discharge of its claim against the Good Shepherd Mining Company, the same to be written across the face of said notes, if the plaintiff would make said loan to the Good Shepherd Mining Company, so as to enable it to pay said amount. . . . Plaintiff states that with full knowledge of the facts above set forth the said W. W. Davis, agent and member of said firm, received said payment of fifteen hundred dollars in cash, and accepted the two promissory notes of the Good Shepherd Mining Company at said time for five hundred dollars each, guaranteel by A. L. Shepard as president thereof, in full satisfaction, payment and discharge of said indebtedness, owing said partnership by the Good Shepherd Mining Com-

pany. Plaintiff states that a similar arrangement was made with the other creditors named above.

"Plaintiff states that relying upon said arrangement, agreement, understanding and facts as aforesaid, it did loan to the Good Shepherd Mining Company for the purposes herein stated, the sum of eight thousand, five hundred dollars, and took a mortgage and conditional sale of said property as security therefor. That the terms of said sale provided that in case of default of the payment of the promissory notes and interest in said loan, plaintiff might take possession of said property, and sell the same at public auction; that said Good Shepherd Mining Company defaulted in the payment of said principal and interest; that said plaintiff took possession of said property, advertised it for sale, as provided in said contract of sale, on the sixth day of February, 1909, the date it was to be sold, purchased it at public auction and has ever since been and is now the absolute owner thereof. Plaintiff states that it is and was at all times mentioned in the petition in this case the owner in fee of the real estate on which the mill and improvements described in plaintiff's petition is located.

"Plaintiff further states that on the twelfth day of December, 1908, the said Coyne Lumber Company, . . . filed a mechanic's lien statement in the office of the circuit clerk of Jasper county, Missouri, for the indebtedness hereinbefore st forth . . . . That said statement, among other things, described said mining plant and other improvements made by the Good Shepherd Mining Company and one acre of ground upon which said improvements were located, and among other things said statement alleged that the work and labor done, material, lumber, fixtures, etc., mentioned therein, were furnished by the said Coyne Lumber Company, under contract therefor for the Good Shepherd Mining Company, and that the

work described and materials furnished was done on said premises, and that the materials were used in said improvements and became a part, thereof and that the Good Shepherd Mining Company was the owner thereof and of the lease, or license interest in said land upon which the said improvements were made and described therein and that the value of the work and labor done and of the materials furnished under said contract up to and including July 31, 1908, was of the value of six thousand three hundred forty-two and ninety-eight one-hundredths dollars and that the balance due at said time after allowing all true and just credits, was three thousand five hundred and twenty-three one-hundredths dollars, and that after this time there was work and labor done and materials furnished under said contract of the value of three hundred seventy-five and fifty one-hundredths dollars and that on the tenth day of August, 1908, there was a cash credit of fourteen hundred sixty-four and fifty-nine one-hundredths dollars and that the balance due and unpaid on the eleventh day of December, 1908, was the sum of two thousand fifty-eight and fifty-five one-hundredths dollars.

"Plaintiff states that the correctness of all said allegations and descriptions mentioned in said mechanic's lien statement were verified by oath of defendant T. M. Coyne, and that the same was subscribed and sworn to on the eleventh day of December, 1908.

"Plaintiff states further that on the sixth day of February, 1909, the said defendants T. F. Coyne, W. W. Davis, and Ed. Foster through their attorney commenced suit in the circuit court of Jasper county, Missouri, at Joplin, and made the Good Shepherd Mining Company the sole defendant therein; that the nature and purpose of said suit was to secure a mechanic's lien on the property described in the afore-

said mechanic's lien statement and again described in the petition filed in said suit.

"Plaintiff states that service on said defendants was made by publication and that judgment for mechanic's lien was declared on said property and acre of ground in the principal sum of two thousand fifty-eight and fifty-five one-hundredths dollars and interest thereon from December 11, 1908, and for costs and that said judgment lien was entered of record. . . .

"Plaintiff further states that in pursuance of said judgment the clerk of this court issued a special execution and delivered the same to the defendant Arch McDonald as sheriff, wha has levied upon the said property against which said judgment lien was rendered and has advertised the same for sale on the thirty-first day of January, 1910." . . .

The controversy between the litigants in this case over vital points focuses upon what transpired at a meeting of L. E. Bates and A. L. Shepard on the one side and W. W. Davis on the other side, which took place at the office of the defendant company on the tenth day of August, 1908. Prior to the time of this interview the evidence shows that the mill and mining property of the Good Shepherd Mining Company was of the value of some five or six thousand dollars, and that this company was in failing circumstances, its indebtedness being some twelve thousand dollars, and that the president of the Good Shepherd Mining Company, A. L. Shepard, was endeavoring to make a compromise settlement with creditors and that for such purpose it became necessary to make a loan. To that end, on the thirty-first day of July, he had an interview with T. F. Coyne, managing member of the defendant partnership. In this interview Coyne was asked by Shepard to figure up the amount of indebtedness due the defendant, which was found to amount to three thousand one hundred two and sixty-five one

hundredths dollars.    Coyne was then informed by Shepard that he was trying to negotiate a loan for seven thousand dollars and asked Coyne to give the Good Shepherd Mining Company a statement of its account as of twenty-five hundred dollars and that he would give the defendant partnership a note for the balance.  For the purpose of procuring a loan defend ant partnership did give Shepard the following state ment:

"Webb City, Mo., July 31, 1908.

"The balance due to date on Good Shepherd account is twenty-five hundred ($2500) dollars.

"COYNE LUMBER COMPANY,

"By T. F. COYNE."

Before this interview of August the tenth, Mr. Davis was informed that this statement for twenty-five hundred dollars had been given to Mr. Shepard for the purpose of securing a loan and that Mr. Shepard was to pay defendants twenty-five hundred dollars.  Mr. Davis' account of this interview was that Bates and Shepard came to the office and Shepard said to him that he had made an arrangement with Coyne to pay the twenty-five hundred dollars in cash and that afterwards he had found that he could not pay that much but wanted to pay fifteen hundred dollars in cash and leave two notes; that a check for fifteen hundred dollars, and two notes each for five hundred dollars, were left by Mr. Shepard at his request.  The second of said notes, due sixty days after date, contained this statement:  "Payment in full Good Shepherd account to August 1, 1908."  That this was written there in the office by Mr. Shepard.  That Mr. Shepard said he would leave the fifteen hundred dollars in cash and was going to leave the notes.  "I told him we had no authority and could not accept the notes; that we would keep them until we could see Mr. Coyne and submit them to him for his approval

and that was the understanding.'' ''I knew Mr. Bates was there as attorney for the Good Shepherd Mining Company. I saw him examining the notes, but he had little to say. I did not know at the time that the Center Creek Mining Company was making the loan or was interested in the transaction.''

It is incredible that the defendant firm should have understood that the notes and cash were left with them for any other purpose than in satisfaction of the entire claim of the defendant partnership against the Good Shepherd Mining Company; and further, they certainly had no authority from anything that was said by Mr. Shepard at this interview to apply the fifteen hundred dollars cash on the account of the Good Shepherd Mining Company and then submit the notes a month or so afterwards—after they were due —to Mr. Coyne to be rejected by him. Mr. Shepard, according to Mr. Davis' account, at all times insisted on leaving the notes as well as the money. The proposition will reasonably bear but one interpretation, even from the testimony of defendants themselves, and that is that there was an offer on the part of the Good Shepherd Mining Company to pay the defendant company fifteen hundred dollars in cash and give two notes for five hundred dollars each in full satisfaction of their entire indebtedness against it, and that the notes and money were received by Mr. Davis upon the express understanding that the offer was to be submitted to Mr. Coyne. Under these circumstances the appropriation by the firm on August the tenth of the fifteen hundred dollars by crediting it on the Good Shepherd account was wholly unwarranted. Their position, viewed from a reasonable standpoint, was, either to receive the notes and the money tendered, all in all or not at all. The acceptance of the fifteen hundred dollars in cash out of respondent's loan to the Good Shepherd Mining Company and the two five hundred dollar notes could be

construed to be but one transaction. Equity will not allow parties to appropriate the part of a transaction that is favorable to them and reject that which is not, thereby assuming the inconsistent position of affirming a contract in part and disaffirming it in part. One having the right to accept or reject a transaction who takes and retains benefits thereunder becomes bound by the transaction and cannot avoid its obligation or effect by taking a position inconsistent therewith; having accepted benefits from it he is estopped from questioning its existence. [16 Cyc. 787; Grooms v. Mullett, 133 Mo. App. 477, 113 S. W. 683; Cadematori v. Gauger, 160 Mo. 352, 61 S. W. 195; Light v. Railway Co., 89 Mo. 108, 1 S. W. 380.]

Mr. Bates, the agent and attorney for the plaintiff, gave substantially the following version of what took place at this interview: "We told Mr. Davis that we came down to try to make an arrangement to make the loan; that the Center Creek Mining Company would not make a loan for the full amount of the indebtedness; that they could only pay fifteen hundred dollars cash on the Coyne Lumber Company's account and that the balance would have to be in notes; that the account would have to be wiped out so that the Center Creek Mining Company could get a first mortgage on the property to secure the loan and that it would be necessary to have an understanding that the twenty-five hundred dollars was given as full payment of the account and that such was to be written across the note and the cash and notes accepted in full payment of the account. The only objection Mr. Davis made was that some material had been furnished since July thirty-first for an office building which was to be covered by the mortgage. I told him that would not make any difference; and it was then agreed that the notes were to be left there, and it was written across the notes that they were given in full payment of the account. It was explained to

him that the Center Creek Mining Company was making the loan to the Good Shepherd Mining Company and the loan would not be sufficient to pay all in cash. When this agreement was made I authorized Mr. Shepard to deliver the check. Immediately after that the mortgage or bill of sale was executed by the Good Shepherd Mining Company to the plaintiff on the property to secure the eight thousand five hundred dollar loan which went to pay the creditors of the Good Shepherd Mining Company.

In this condition of the record of the evidence presented to the trial court, we think the well-established principles governing equity practice in appellate courts should be applied, that while this court is authorized to review the evidence and facts, yet in determining the weight to be attached to the testimony of the witnesses where it is oral and is conflicting, deference will be given to the opinion of the trial court who had the opportunity of seeing the witnesses face to face and observing them while they were testifying. [Foster v. Williams, 144 Mo. App. l. c. 227, 128 S. W. 797; Danforth v. Foster, 158 Mo. App. 94, 139 S. W. 520; Rood v. Crocus Hill Mining Co., 157 Mo. App. l. c. 410, 139 S. W. 222; Wyrick v. Wyrick, 162 Mo. App. 723, 145 S. W. 144.]

The defendants filed their account for a mechanic's lien on December 12, 1908, claiming a balance on their account of two thousand and fifty-eight and fifty-five one-hundredths dollars, and included the item of account against the Good Shepherd Mining Company from May the sixth to July the thirty-first, three thousand one hundred and two and sixty-five one-hundredths dollars, being the amount which was to be wiped out and satisfied according to their agreement with the plaintiff. This account showed that on August the tenth it was credited with cash in the sum of one thousand four hundred sixty-four and fifty-nine one-hundredths dollars, there being a discrepancy

between the amount credited and the fifteen hundred dollars of thirty-five and forty-one one-hundredths dollars, leaving the sum of one thousand six hundred thirty-seven and six one-hundredths dollars of the total amount due July the thirty-first, not credited. The statement of Mr. Davis in regard to this discrepancy was, in substance, that the fifteen hundred dollars was paid by the check of the Center Creek Mining Company and accepted on the tenth day of August and that it was credited as of that date on the journal of the defendant company, but the lien account showed a discrepancy of thirty-five and forty-one one-hundredths dollars and that the credit should have been for this check for fifteen hundred dollars but through some mistake the difference was credited on another account. A judgment was rendered in favor of defendants foreclosing their lien against the Good Shepherd Mining Company who alone was made defendant in the action and served by publication. The judgment enforced a mechanic's lien against a complete concentrating plant and buildings and an acre of ground upon which the same were situated, the judgment further reciting that upon the acre of ground the Good Shepherd Mining Company owned a mining lease and license from the Center Creek Mining Company for mining purposes.

The defendant partnership had the right to waive, discharge, release, or satisfy their mechanic's lien, and after having for a consideration waived it and agreed that as against the plaintiff in this action their account should be satisfied and plaintiff's mortgage should become a first lien on the concentrating plant and property, they could not afterwards revive such lien. Any agreement or stipulation of theirs which clearly showed that it was their intention to waive or satisfy the lien or the account on which it was based is sufficient to accomplish that purpose. [27 Cyc. 263.]

Under the evidence the appellants. furnished the Good Shepherd Mining Company a statement to be used to obtain a loan on the concentrating plant and improvements. This statement was to be shown to the parties who were to make the loan. It showed that the entire debt at that time due the defendant part-. nership was twenty-five hundred dollars. To procure the loan, this statement was shown to the respondent. Subsequently the appellants agreed with respondent that if the latter would make a loan of eight thousand five hundred dollars, fifteen hundred dollars of which was to be received in cash, they would accept two notes of the Good Shepherd Mining Company for five hundred dollars each in full payment and discharge of their lien claim against the improvements so that the respondent could be secured by a first mortgage on the improvements on the leased premises. Relying on this, respondent made the loan, took the security, and appellants received the fifteen hundred dollars in cash and the two notes for five hundred dollars each with the understanding that it was to wipe out and satisfy fully, so far as respondent was concerned, their lien. Notwithstanding this agreement, appellants subsequently filed an account including items released from lien and obtained judgment enforcing a mechanic's lien on the leased property.

The law granting liens to mechanics and material men requires that they shall file a just and true account of the demands due them after all just credits have been given. [Section 8217, Revised Statutes 1909.] The account is the foundation of the suit. The necessity of filing this account and of its being correct and that all credits should be allowed is apparent, especially when the property-holder is concerned, the proceeding being strictly in *invitum* and the property-holder not being a necessary party to the valid enforcement of the lien, the material man thus subjecting the owner's property to an encumbrance or burden, and

that without any contract with him. The enforcement of a mechanic's lien is therefore a special and extraordinary remedy or privilege given by the law, and it is a well established principle that one attempting to avail himself of the advantages of such a lien must fully comply with the provisions of the law conferring it. The requirement of the statute that the lien claimant should file a just and true account is an element essential to securing the lien and is as much a matter of substance as any other requirement of the law, and unless the credits are given in compliance with the statute a party cannot enforce his lien upon the property of the owner of the buildings. [Hoffman v. Walton, 36 Mo. 613.] The rights of the lienor, however, are not lost where he unintentionally fails to enter in his account the full amount of the credits to which his debtor is entitled. In the present case, the defendants having included in their lien claim against the Good Shepherd Mining Company some sixteen hundred dollars of items that by their agreement were satisfied and discharged, their account was not just and true and did not contain the credits within the meaning and true intent of the lien statutes and they knowingly and intentionally failed to comply with the substantial requirement of the statute as to a true account and defendants' lien was destroyed by their intentional failure to file the statement as required by the law. [Dougherty & Moss Lumber Co. v. Rothbaum, 156 Mo. App. 215, 137 S. W. 83; Section 8223, Revised Statutes 1909.]

The chattel mortgage taken by the plaintiff to secure its loan of eight thousand five hundred dollars was defectively acknowledged in that the certificate of acknowledgment failed to state that A. L. Shepard, the president of the Good Shepherd Mining Company, signed and sealed the said instrument in behalf of the said corporation by authority of its board of trustees or directors as required by section 2799, Revised Stat-

utes 1909. Under these circumstances, said chattel mortgage was invalid as to any other person than the parties thereto until possession of the mortgaged property was delivered to the mortgagee, the plaintiff in this case. But after the said mortgage had become due by its terms the property was advertised, a sale was had, and the purchase of the mortgaged property was made by the plaintiff and possession taken under it. Whatever legal frailty there might have been in the chattel mortgage was cured by the mortgagee's taking actual possession. [Landis v. McDonald, 88 Mo. App. l. c. 339; Hardy v. Graham, 63 Mo. App. 40.] In such case the mortgage could not be legally questioned until the creditor clothes himself with a judgment and execution or some legal process against his debtor's property. Creditors cannot interfere with property of their debtor without process. [Landis v. McDonald, supra, l. c. 341.] As to the defendants' lien account for materials furnished prior to July 31, 1908, it being satisfied by agreement, the defendants would be estopped from setting up any rights in the mortgagee's property after it had passed into the possession of the plaintiff. As to the items of their lien account subsequent to July 31, 1908, amounting to some three hundred dollars, such items were contained in defendants' mechanic's lien in which they did not give the proper credits, and therefore, under the law, they lost all right to enforce a lien as to them, they being incorporated with illegal items.

The concentrating plant, as between landlord and tenant, was personal property and subject to removal by the tenant during his tenancy, but the plaintiff in this case having by agreement with the Good Shepherd Mining Company taken possession of the leased premises and the erections thereon, such erections became an integral part of the real estate to which they were affixed; being incorporated with the realty, they became by operation of law a part of the freehold and

would follow its ownership as fully as if they had been constructed by the plaintiff in the first instance and placed there prior to the letting of the property. [Lacey v. Giboney, 36 Mo. 320; Robinson v. Campbell, 8 Mo. 365; Williams v. Lane, 62 Mo. App. l. c. 68.]

The lien claimed by the defendants covered leasehold property and the erections thereon and in case of sale of the property upon which the lien was declared under the defendants' judgment the purchaser of the improvements would have been authorized at any time within sixty days to have entered upon the plaintiff's premises and removed the buildings and improvements. [Section 8216, Revised Statutes 1909.] The facts showing the invalidity of the lien upon which the respondent based its rights were outside of the record and rested in parol and the defects in the lien could only be shown by extrinsic evidence. On the face of the defendants' judgment on the mechanic's lien defendants had a valid lien claim on the acre of ground leased and upon the erections thereon, while in fact they had no lien whatever by reason of their failure to comply with the lien law. Equity exercises jurisdiction to protect real property and remove a cloud that will be likely to injuriously affect the market value of the real estate or seriously embarrass the owner by preventing, affecting or impeding the free sale or disposal of his title or interest in the property. The rule applicable to such cases is that equity will interpose where the pretended title which constitutes an alleged cloud or the proceeding which it is apprehended will create one is apparently valid on its face and the party in possession will be compelled to resort to extrinsic evidence to show the invalidity of the pretended title and to defend his own. [6 Am. and Eng. Ency. Law, 153.] In the case of Merchants' Bank v. Evans, 51 Mo. 335, 345, it is said that the weight of authority and reason sustains the position that if the defect is such as to require legal

Mining Co. v. Coyne.

acumen to discover it, whether it appears on the deed or proceedings, or is to be proven *aliunde,* courts of equity will entertain jurisdiction to remove the cloud. [See, also, Bank of Tipton v. Davidson, 40 Mo. App. 421, 425; Gardner v. Terry, 99 Mo. 523, 12 S. W. 888; State ex rel. Bayha v. Phillips, 97 Mo. 331, 339, 10 S. W. 855; Verdin v. City of St. Louis, 131 Mo. 26, 33 S. W. 480, 36 S. W. 52.]

It is said in this case by appellant that respondent has an adequate remedy at law. Whether a legal defense could be interposed we need not consider. The appellants are threatening a levy upon and sale of respondent's property under circumstances which justifies the exercise of the preventive jurisdiction of equity to avoid the casting of a cloud on respondent's title. No prudent purchaser would take the property with a mechanic's lien judgment against it and respondent consequently had the right to invoke the aid of a court of equity to protect it.

The defendants herein in their suit against the Good Shepherd Mining Company to enforce their mechanic's lien might have made the present plaintiff a party thereto, it being interested in the property charged with the mechanic's lien, but not having done so, the plaintiff is not bound by such proceedings. [Section 8221, Revised Statutes 1909; Hauser v. Hoffman, 32 Mo. 334; Womach v. City of St. Joseph, 201 Mo. 467, 100 S. W. 443.]

The appellants in this case will not be permitted to enforce their mechanic's lien against the improvements which have become a part of respondent's realty after having furnished despondent with their statement and agreeing that if respondent would make a loan, a part of which was to satisfy appellants' claim, appellants would accept two promissory notes in addition to the cash payment in full satisfaction of the claim against the property and in full satisfaction

164 App.—33

of the indebtedness of the Good Shepherd Mining Company; and whatever other agreement appellants had with the Good Shepherd Mining Company but not brought to respondent's attention is not binding on it. We think to allow the appellants to gain the benefit of what they had released by their contract and to destroy the respondent's security for its loan which appellants agreed they should have, would be a virtual or constructive fraud, although no actual fraud was intended, which a court of equity will not tolerate.

For the reasons herein appearing, the judgment is affirmed. All concur.