GEORGE PINNING, JOHN PINNING and F. PINNING, co-partners trading as PINNING BROTHERS *vs.* JOHN W. SKIPPER.

*Mechanics' lien— Waiver of Lien—Art. 63, sec. 3, of the Code.*

The mechanics' lien law (Art. 63, sec. 3, of the Code) provides that "no person having such lien shall be considered as waiving the same by granting a credit, or receiving notes or other securities, unless the same be received as payment, or the lien be expressly waived." HELD:

That under this law a special contract, inconsistent with its existence or enforcement, is in effect an express waiver of the lien.

P. Brothers entered into a written contract with S. to furnish materials and labor in the erection for him of certain houses. By said contract they agreed to give S. a good lien bond as a bar against liens upon said houses, or either of them, for work done or material furnished or for labor or hire. At the same time they gave to S. their bond, with a surety, to which a copy of said contract was attached, conditioned for the faithful performance on their part of the terms and conditions of the contract. HELD:

1st.   That the stipulation to give a bond "as a bar against liens upon said houses, or either of them," and the giving of the bond conditioned for the faithful performance of their part of the contract, constituted in law a waiver of lien for said work and materials.

2nd.   That the waiver of the lien was not impaired by the fact that S. had violated his part of the contract, but the remedy against him for his breach of the contract was to sue him in an action at law.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—The plaintiffs offered six prayers which the Court (HARLAN, J.) refused. They are omitted, not having been noticed in the opinion of this Court. The defendant offered five prayers, all of which, save the first, were refused. The first, as follows, was granted:

1. That the provision in the contract for the execution of a good lien bond, and the subsequent execution of the obligation offered in evidence to secure the due performance of the said contract, constitute in law a waiver of the lien sought to be enforced in this suit, and therefore the verdict of the jury must be for the defendant.

The plaintiffs excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, BRYAN, and McSHERRY, J.

*Frederick C. Cook,* for the appellants.

*John V. L. Findlay,* for the appellee.

MILLER, J., delivered the opinion of the Court.

The Mechanics' Lien Law provides that "no person having such lien shall be considered as waiving the same by granting a credit, or receiving notes or other securities, unless the same be received as payment, or the lien be expressly waived." *Code, Art.* 63, *sec.* 3.

It is conceded that under this provision the lien may be waived by a special contract inconsistent with its existence or enforcement. Such a contract is, in effect, an express waiver of the lien.

The lien claim in this case, amounting to $991.56, was filed by the appellants against twenty-two brick houses built on contiguous lots of which the appellee was the owner or reputed owner and builder. The itemised

account is for sand used in laying the bricks, for digging the foundations and cellars, grading the yards and pavements of these houses, and for grading under back buildings. It appears from the record that these lots owned by the appellee and on which he intended to build these and other houses, contained a large quantity of valuable sand, and on the 21st of July, 1887, before any of the work was begun, he and the appellants entered into a special written contract.

By this contract the Pinnings agreed, 1st, to do all the excavation necessary for the erection of eighty-nine houses, more or less, on these lots, to grade the yards and alleys in rear of the same, to grade Castle street from Chew street to the alley in the rear of the houses to be erected on Eager street, and to furnish so much good sharp sand as may be necessary for the brick work and plastering these eighty-nine houses at 45 cents per thousand bricks, said 45 cents to include the plastering sand; 2nd, to do all this work and furnish this sand for the privilege of removing and selling the surplus sand for their own use; 3rd, not excavate for sand within ten feet of the rear wall of or where any of these houses are intended to be built; 4th, to excavate the cellars and foundations as Skipper may require the same to be excavated, to grade the yards by the time the buildings are completed, and to supply the sand for the buildings as Skipper may require it; 5th, that should they fail to comply with and fulfil their part of this contract, Skipper should have the right to employ other persons to complete the work. and in that case all the work they may have done shall be forfeited to Skipper as liquidated damages; 6th, they agree to give to Skipper a good lien bond *as a bar against liens* upon said houses, or *either of them,* for work done or material furnished or for labor or hire; 7th, to take a house or houses in full payment for the sand delivered as above mentioned; and should there

be any balance due to Skipper they agree to pay the same to him. Skipper on his part agreed to give the Pinnings the surplus sand in consideration of their performance of the above work, and to give a good and sufficient deed of assignment to them for the house or houses above mentioned. At the same time the Pinnings gave to Skipper their bond, with a surety therein, to which a copy of this contract was attached, in the penalty of $1000, conditioned for the *faithful performance on their part* of the terms and conditions of this contract.

There may be some difficulty as to the construction and effect of this contract in other respects, but we find none in determining that it is utterly inconsistent with the enforcement of a mechanics' lien against either of these houses by the appellants. The stipulation that they would give a bond "as a bar against liens upon said houses, or either of them," and the giving of the bond conditioned for the faithful performance of their part of the contract, clearly, in our judgment, constitute in law a waiver of the lien sought to be enforced in this suit. The filing of this lien claim was a breach of the contract, and consequently of the condition of the accompanying bond. This we take to be too plain to admit of discussion.

It is said, however, that the appellee has violated his part of this contract, and therefore the appellants are not precluded from filing and enforcing their lien claim. The case mainly relied on in support of this contention is *Trustees of the German Lutheran Church, &c. vs. Heise & Co., et al.*, 44 *Md.*, 453; but in our opinion, that case sustains no such proposition. There the trustees of the church entered into a contract with Siegman and Jones, the contractors, to build the church, furnish all materials and work therefor, and to deliver the same to the trustees "free from all claims, liens and charges what-

Pinning Brothers *vs.* Skipper.

soever," and Frederick and Herman Wehr, with others, became sureties on a bond for the faithful performance of the contract by the contractors. Various lien claims were filed by parties who had furnished materials to the contractors, among whom were the Wehrs, who filed a *bill in equity* to enforce their claim by a sale of the church building and grounds. The answer of the trustees set up the contract and bond as a bar to the claim and also averred that the contractors had failed to execute their contract. The Wehrs endeavored to relieve themselves of these defences by showing that extensive changes were made in the plan of the building, other than those provided for in the contract, without the assent of the sureties, and such as enlarged the liability of the contractors, and therefore the *sureties were discharged.* Upon these questions a mass of conflicting evidence was adduced. The Court below held that the claimants were not estopped from asserting their lien, and that the trustees could not set up any claim for damages for non-performance of the contract by the contractors, by way of counter claim or set-off against the lien claim, but that the trustees should pursue their remedy at law on the bond, and accordingly decreed a sale of the church property to satisfy the lien claim. The lower Court did not pass upon the question of the discharge of the sureties, but left it to be determined when the bond was sued on at law, and in this that Court was sustained by the Court of Appeals, who said the question of the discharge of the sureties, as well as that of the non-performance of the contract by the contractors, should be tried with the assistance of a jury. But this Court also held that there was error in decreeing a sale for the enforcement of the lien; for, unless, the claimants as sureties had *been discharged* as they contended, it would be against equity and justice to allow them to proceed with the enforcement of their lien in the face of *their*

*bond that no such lien should exist;* that there was no
reason or justice in requiring the church to pay off the
lien, and then sue on the bond to recover the money back
from the same parties receiving it under the lien; and
that a Court of equity should rather stay than enforce
such a proceeding.    This Court, therefore, held that the
Court below should have retained the bill of the claim-
ants, giving the church a reasonable time to sue on the
bond in order to have it tried and determined whether
the sureties thereon have been discharged; and, if not,
then to what extent they are liable for the defaults of
their principals, the contractors; that if it should be de-
termined from any thing that has occurred that the
sureties have been discharged, then of course *their lien
can be enforced;* but if it be determined otherwise, and
there should be a recovery on the bond, that judgment
may be set-off to the lien claim; that such application
of the doctrine of set-off or compensation is well estab-
lished in Courts of equity, and the ordinary principles
of justice would seem to require it in this case.

    We have thus given at some length the precise rulings
in that case, because it is a decision of this Court, and
has been earnestly pressed upon our attention by counsel
for the appellants as conclusive in their favor of the
position they have taken.    But we do not think so, and,
without adverting to other obvious distinctions, it suffices
to say that here there is no question of suretyship.    The
lien claimants in this case are not sureties on the bond
of the contractors, but the contractors themselves, and
they are seeking to enforce a lien upon these houses in
face of their own express stipulation to the contrary.
To make the cases similar or analogous, we must sup-
pose (contrary to the fact) that the claim in the *Wehr
case* had been filed by the contractors.    If that had been
the case, this Court would have decided without hesita-
tion that their contract and bond peremptorily barred

the assertion of any such claim. The *Wehrs* were sureties on the bond of the contractors, and if they had been discharged from this suretyship by reason of the action of the trustees of the church, or in any other way, there was no obstacle in the way of their lien claim, and they could enforce it, but we can conceive of no possible state of circumstances under which the *contractors* would have had the same privilege. If a party expressly contracts that he will not do a certain thing, or will not set up a certain claim against the other contracting party or his property by resort to a certain process, it seems to us a legal anomaly to say he can go on and do the thing, or avail himself of the forbidden process, because he has a grievance against such other party on some other ground, or a claim which he can enforce against him by a different suit or process. If the appellants have been damnified by a breach of this contract on the part of the appellee, or if he has prevented them from performing it, their only remedy is to sue him therefor in an action at law. In our opinion, therefore, the Court below was right in taking this case from the jury and directing a verdict for the defendant by granting his first prayer.

*Judgment affirmed.*

(Decided 15th November, 1889.)