ATLANTIC COAST BREWING COMPANY v. DONNELLY.

---

ATLANTIC COAST BREWING COMPANY v. ATLANTIC
LUMBER COMPANY.

---

ATLANTIC COAST BREWING COMPANY v. PHŒNIX
IRON COMPANY.

---

ATLANTIC COAST BREWING COMPANY v. CLEMENT.

1. Under the Mechanics' Lien law (*Gen. Stat.,* p. 2063), when the building is erected under a contract with the owner of the land, it is erected by the owner and is not within the provisions of the fourth section of the act.
2. In such case, if the contract be not filed, the fact that therein the builder has agreed that there shall be no liens does not affect others who, under section 1, have a right to a lien.
3. For materials furnished under an entire contract there may be a recovery had upon a *quantum valebat,* if the unfulfilled contract was lawfully rescinded by the parties thereto.
4. One of several sureties upon a bond conditioned that the builder shall keep the building free from all liens, does not, by the fact of such suretyship, forfeit his right as a materialman to enforce a lien against the building.

---

On error to the Atlantic Circuit.

Argued at February Term, 1896, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and GARRISON.

For the plaintiff in error, *John J. Crandall.*

For the defendants in error, *Clarence L. Cole.*

For the Phœnix Iron Company, *David J. Pancoast.*

The opinion of the court was delivered by

GARRISON, J. These four cases arose out of the same transaction and may be considered together, although each case has some feature not common to all. Of the several assignments of error there is one that runs through the entire group and raises this question, viz., whether, under our Mechanics' Lien law, where the building is erected under a contract with the owner of the land not on file, a materialman must, in order to have a lien under section 1, show a written consent of the owner, under section 4.

In the transaction before us the contract was between the Atlantic Coast Brewing Company, owner, and Frank Math, builder. The sixth section was in these words: "The owner shall not in any manner be answerable or accountable  *  *  * for any of the materials or other things used and employed in finishing and completing (said building)."

When this contract was offered in behalf of the plaintiff, who, in each case, claimed for materials furnished, it was objected to upon the ground that "it is so inconsistent with the offer to show that it is a consent to the builder in writing, that it clearly shows that it is not."

The major premiss in this proposition is that a building erected under a contract with the owner of the land, is a building erected by a person other than the owner of the land. If this be not so, the objection is without force. We think that it is without force. The construction uniformly given to this fourth section of the Lien law, from 1855, when *Babbitt* v. *Condon*, 3 *Dutcher* 154, was decided by this court, down to

1893, when *Earl* v. *Willets,* 27 *Vroom* 334, was decided in the Court of Errors, has been, in the language of the later opinion, that "it is obvious that a contract, when the building is so erected, must be signed by a person other than the owner of the land. Such a contract must be made by a person other than the owner, else it would be the contract of the owner."

The matter seems to be entirely at rest.

. In the case of the Atlantic Lumber Company, plaintiff, the court was requested to instruct the jury that a certain bond to secure the builder's contract, from which the plaintiff's name had been erased, imputed to the plaintiff notice of such contract, and that as the contract provided against liens, the plaintiff was debarred from asserting its lien. The testimony did not establish all of the facts recited in this request so that it could have been charged as a whole. It was therefore not error to deny it. If the substantial question be severed the refusal was still correct. The facts touching the plaintiff's knowledge of the bond and the time it was acquired, whether before or after the materials were furnished, must in any event be for the jury. So that the plaintiff was not injured unless the bare existence of the waiver of liens in an unfiled contract protects a building from liens. This obviously is not so. The right of lien given by the first section is fixed when materials are furnished, unless it is taken away by section 2. The fact that the builder who made the contract has waived his right does not affect the rights of others. In each case the right is personal and is vested unless personally waived.

There is nothing substantial in the assignment.

In the case of the Phœnix Iron Company, plaintiff, there are two assignments of error based upon a request to charge, and an exception to the charge of the court as delivered. These exceptions tend to raise the question whether a materialman, who has made an entire contract with the builder, may, upon the failure of the builder to make the payments called for by each contract, refuse to complete it and lien the building for the material actually delivered as on a *quantum*

*valebat.* The assignment, however, does not call for decision of this question.

The jury were correctly instructed by the trial court, that the right of the plaintiff to a lien for materials furnished the building under an entire contract, depended upon whether the contract had been lawfully rescinded by the parties thereto. This was left to the jury, although the testimony upon this point was practically undisputed. There was no occasion for charging an abstract proposition of law, unsupported by adequate proof.

The case of Joseph C. Clement, plaintiff, presents a somewhat novel question. Math, the builder, had given a bond to the owner for the faithful performance of his contract. Clement was one of the sureties on this bond. The condition of the bond was that Math should " indemnify and save harmless the owner from all claims, demands, suits and actions, * * * and should keep the said building and lot free from encumbrance and lien of any and all debts, and furnish complete release of liens." Clement furnished materials for the building, for which he filed a lien. The contention of the owner is that Clement, by executing the bond as surety, barred his own right to lien the building.

The bond was put in evidence incidentally—almost accidentally—since the fact of its mechanical attachment to the contract seems to have been its only relevancy to the plaintiff's case at the time it was impliedly offered. Its introduction was opposed by the defendant below, who now seeks to make the case turn upon its controlling import. After the issue raised by the pleadings had been tried, the defendant asked " that a binding instruction be given the jury to find that the debt is not a lien, for the reason that the plaintiff has undertaken, in a bond, that there shall be no lien as per the terms of the bond itself offered in evidence." The refusal of this request is the point upon which a reversal of the judgment is now sought.

It will be seen that the proposition is presented in a mode ill-adapted to its proper consideration. If true, it constituted

a complete defence, yet it was not pleaded. It falls to the ground if there was any material alteration in the contract without the assent of the surety, yet no opportunity for a replication was afforded. A demurrer to such a plea, or a joinder to such a reply, would have presented an issue capable of definite disposition. As the case stands, the question upon which it turns does not appear upon the record, and its adjudication will not be within any issue the parties set out to try or that in point of fact they did try. The defence is clearly not estoppel, for the issue concerned a transaction in which the obligee took no part; it is not a waiver, because the plaintiff's agreement was of a secondary character, resting upon no direct consideration. At bottom, the defence is that it would be circuitous, and hence oppressive, to permit the surety on the contractor's bond to proceed with a lien after the enforcement of which the obligee would be compelled to sue on the bond in order to get back the money recovered on the lien.

The "vigilance and jealousy" with which the law "favors a surety and protects him" (*De Colyar, p.* 277), would be a very empty phrase if his legal liability may be enlarged upon the ground that it is inequitable to limit it by the express terms of his undertaking.

Avoidance of circuity of action is at best a doctrine of convenience, a secondary equity, so to speak, and not to be resorted to in the face of either legal rule or substantial right. Nor is it to be rashly assumed that the equity of the case is with the obligee. The plaintiff is one of three sureties, between whom the right of contribution exists as part of the contract of each. This right at law rests upon an involuntary payment made for a defaulting principal.

This right is not only a principle of equity but inheres also at law in the contract itself. As was suggested by Lord Eldon, in *Craythorne* v. *Swinburne,* 14 *Ves.* 164, "the principle of equity being in its operation established, a contract may be inferred upon the implied knowledge of that principle by all persons." This legal and equitable right of the plaint-

iff to contribution with respect to every injurious default of the principal debtor, will not arise in the case before us if the debt in question be deemed to be barred upon the ground now advanced. For then it would be in law the voluntary act of the creditor, not a payment made necessary by the breach of the debtor; the superior equity therefore is with the plaintiff. The sole authority cited to us is *Pinning* v. *Skipper*, 18 *Atl. Rep.* 659, which is wide of the mark in about every way in which one case can differ from another, having been decided (1) upon the terms of a statute concerning waiver of liens (2) by a court administering equity (3) in a case where there was no surety but a principal debtor who (4) had contracted not " to indemnify " but " to bar against liens." There is, however, an adjudication in the same jurisdiction in which the rights of a surety in such case were indirectly considered. I refer to the case of *German Lutheran Church* v. *Wehr*, 44 *Md.* 453. There the obligation of the surety was that the builder should deliver the building " free from all claims, liens and charges whatsoever." The surety, having furnished materials to the building, filed a bill in equity, the established method of enforcing a lien. The answer of the owner set up the bond as a bar. The claimant replied that he was discharged as surety by reason of unauthorized changes in the principal contract. The lower court, without passing upon the question raised by this course of pleading, viz., the discharge of the surety, held that he was not barred from asserting his claim, and that the owner's remedy was at law on the bond. The sale of the property in equity was accordingly decreed. Upon appeal, it was held that it was error to direct a sale, and that the bill should be retained in order to have it determined, by suit on the bond, whether the surety had been discharged. In this connection it was said that " there was no reason or justice in requiring the church to pay off the lien and then sue on the bond to recover the money back from the same party receiving it under the lien, and that a court of equity should rather stay than enforce such a proceeding."

The question of the surety's right to contribution was not stirred, although the opinion states that the claimant was surety with others. The decision itself went no farther than to vacate the decree of sale until the right of the parties had been adjudicated at law. For the reasons already given, I am not greatly impressed with the judicial view of the inequity of the claimant's suit, but if this were otherwise it would not tend in the least degree to affect a court of law called upon not to consider the reason or justice of a proposed line of conduct, but to construe a written contract and say whether the surety therein had debarred himself at law from a right of action given by a general statute of the state.

My own opinion is that if a surety lives up to his undertaking according to its precise terms, he has filled the measure of duty demanded of him at law and has suffered all that his agreement calls for, without stripping himself of the right to partial reimbursement with which he was clothed by his contract.

This leads to a denial of the doctrine that a surety on a contractor's bond, by the bare fact of agreeing to indemnify against liens, has barred his own right of lien in the premises.

The judgment rendered in each of these cases is affirmed, with costs.