# Richmond.

## THE ROWLAND LUMBER CO. v. P. SANFORD ROSS.

March 13, 1902.

1. CONTRACTS—*Breach.*—A party to a contract has the *power* to violate the contract, and for such violation courts of law can only award compensatory damages, but he has no *right* to violate it. The violation is not a contractual right.

2. PRINCIPAL AND AGENT—*Acts of Unauthorized Agent—Estoppel—Case at Bar.*—In the absence of acquiescence or ratification, a principal is not estopped to deny the unauthorized acts of an agent whom he has not held out to the other party to an alleged contract, or to the world, as having the authority claimed. In the case at bar there was a valid written contract between two principals, and the evidence fails to show authority in the agent of one of them who was superintending the execution of the contract to modify that contract, or that his principal held him out as having such authority, or that such principal had any knowledge of the alleged modification, or that he has since acquiesced in or ratified the unauthorized acts or declaration of the agent, if any such there were, and hence the principal is not bound by the alleged modification.

3. PLEADING—*Verdicts—Motion to Set Aside—Excessive Damages.*—A motion to set aside a verdict because contrary to the evidence should be granted where the damages allowed by the verdict are substantially in excess of the amount warranted by the evidence, although the motion does not in terms ask that the verdict be set aside because the damages allowed are too large.

Error to a judgment of the Law and Chancery Court of the city of Norfolk, rendered October 20, 1900, in an action of assumpsit wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*Edward R. Baird, Jr.,* for the plaintiff in error.

*Robert M. Hughes,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

P. Sanford Ross sued the Rowland Lumber Company in assumpsit and obtained a judgment against it for the sum of $4,244.99, with interest at the rate of 6 *per cent.,* and the case is before us upon exceptions taken to the rulings and judgment in the trial court.

The Rowland Lumber Co., desiring to have a channel dredged from a point in Scott's Creek, Norfolk harbor, to the site of its proposed lumber shed, received a letter from P. Sanford Ross Company of date November 3, 1899, addressed to G. M. Serpell, Esq., as follows:

*"Dear Sir,*—We will agree to do what dredging you have to do at your terminal at Pinner's Point for eleven three quarters (11¾) per cubic yard, scow measurement. Material to be put in scows and scowed away, work to be done in a first-class and thorough manner, and subjected to your approval. Hoping the above figure is a satisfactory one to you, and you will feel so disposed to let us do the work, we remain,

Very truly yours,

P. SANFORD ROSS (Inc.),

Per ELY."

On January 23, 1900, Serpell, acting for the Rowland Lumber Co., replied as follows:

"Mr. P. SANFORD Ross, Norfolk, Va.:

*Dear Sir,*—I have your bid of eleven and three-quarter (11¾) cents per cubic yard for digging a channel about 600 feet long

and forty feet wide, and about thirteen feet at low water in
Scott's creek, Norfolk harbor, to the site of the proposed lumber shed of Rowland Lumber Company, with following condition: Quantities to be paid for by scow measurement, deductions to be made for all dredging over thirteen feet in depth at
mean low water, and for greater width than forty feet.   An
allowance of six inches will be made for back filling.

Yours truly,

G. M. SERPELL,<br>For Rowland Lumber Co.

Accepted: P. SANFORD ROSS.
    Per Ely, for Sanford P. Ross."

These letters are the evidence of the written contract between the plaintiff and defendant.   In the latter part of January the Sanford Ross Dredging Company commenced operations.   It claims that it found the work more difficult than
was expected; that it had been misled by the representations of
the Lumber Company as to the place where the channel was
to be dredged; that it ran further into the shore than was anticipated; the dredging being thereby rendered more difficult,
and, the depth of water proving insufficient to float the scows
by which the material excavated was to be removed, necessitated the handling of material more than once, diminished the
load which the scows were able to take to the dumping ground,
and greatly increased the cost.

The contention of the Dredging Company in the court below
was that very soon after it commenced work and found itself
confronted with these adverse conditions, it represented the situation to Serpell, through whom the contract with the Lumber
Company had been made, and demanded a modification of it as
to the rate of compensation to be paid, and the manner in
which the material to be removed was to be estimated.

It cannot be denied that there is evidence which tends to

prove its contentions in these respects. On the other hand, it seems plain that the verdict and judgment are for a sum greater than is authorized by the written contract, though we are not prepared to state in precise terms the amount of the excess. If, then, the defendant in error recovered a larger sum from the plaintiff in error than was justly due from it under its written contract the judgment must be reversed, unless the evidence shows a modified or substituted verbal contract under which the recovery may be maintained. As we have said, the Dredging Company claims that it made its complaint, and was promised relief very soon after it commenced work. This is denied by the Lumber Company, and the court is asked to consider, in determining the issue thus made, not only the testimony of witnesses, but certain documentary evidence.

On the 16th day of February, 1900, the following letter was addressed by the Sanford Ross Company to G. M. Serpell:

*"Dear Sir,*—We would resp. ask of you that you would allow us a higher price for this hard digging, that we have found for about 150 in the forty-foot cut, as the material is such that it is all our machine can do to dig it, as it is composed of hard clay and sand, and an average in same when scowed away would be very small, so much so, that after we had paid the charter of two tug boats in connection with the machine (also the working machine) would amount to $125 per day, without wear and tear to machine. When we gave you our figure of 11¾ cents per cubic yard scow measurement for this work, we had no idea that you expected to go in so far in shore (which has caused the hard digging). If we had known this at first, we would have gone higher in our price to allow for this hard material. We have also been handicapped on the work from the beginning by having low tides, which delayed us on our work. We could not get enough water to float our scows full. We feel that our figure was an exceedingly low one for such a small job, but we were in hopes that we would come out

on top by giving you a No. 1 job on this work. So far we have not cleared expenses, as we have had bad weather to contend with, and now, with this hard material that we have struck in the forty-foot cut about 150 feet in that you wish us to scow away, we would respectfully ask of you to give us a price for same that we could clear expenses on. We conscientiously feel and would ask that you give us eighteen cents per cubic yard scow measurement for this 150 by forty cut in, as in this material we could not average 800 cubic yards per day. If we could have thrown this material over on each side of the cut and let it lay we would have finished this work at 11¾ cents, but when we come to scow it away, this necessitates two tug boats, one to wait on machine to put scows in and take same out, and the other to take tow to dump and back. This puts the cost on us for tug charter of eighty dollars per day. And to run a machine is an actual cost of forty-five dollars per day. This makes the total expense per day one hundred and twenty-five dollars. We would like to go ahead on this work and finish it up in good shape so that you would be perfectly satisfied with same, but to do this 11¾ cents and scow material away, we would lose from thirty to thirty-five dollars per day in this hard material.

Hoping that you may grant the above request of eighteen cents per cubic yard, scow measurement, so that we may continue with the work, we remain,

Very truly yours,

P. SANFORD ROSS (S. M. E.)"

On February 20th, Serpell sent the following reply:

"MR. P. SANFORD Ross, Norfolk, Va.:

*Dear Sir,*—I am in receipt of your letter requesting an advance price over your contract for a part of the dredging you are doing at Pinner's Point for the Rowland Lumber Company,

and have referred the letter to Mr. C. S. Rowland, president of the Rowland Lumber Co., with my recommendation for some advance in the price.

Yours truly,

G. M. SERPELL."

The Lumber Company declined to modify the original contract. We are of opinion that the Dredging Company wholly fails to show that it was deceived by any misrepresentations upon the part of the Lumber Company with respect to the place at which the work was to be performed, or with respect to the depth of water at that point. The whole environment and all the physical conditions were as obvious and as open to the inspection of the one as to the other. Commencing at the channel, and working in the direction of the shore, the Dredging Company could have been under no misapprehension with respect to the location of the channel which it was to make, or as to the nearness of its approach to the shore. Surely, the Lumber Company is not responsible for any loss or inconvenience occasioned by adverse winds and low tides, and the letter of February 16th strikes us as an appeal to the generosity of the Lumber Company for relief from a contract which, under unexpected conditions, had proved onerous, and not as a matter of right. There would have been no occasion for that letter had a valid verbal contract superseded the terms of the written contract of which complaint is made.

Nor does the verbal contract under which the Dredging Company claims appear to have been entered into by any person authorized to act on behalf of the Lumber Company. Serpell, it is true, was the person through whom the original contract had been entered into, and upon complaint being made it is alleged that he referred the Dredging Company to the engineer of the Lumber Company, and to its agent stationed upon the scow to keep an account of the work done, but Serpell,

the engineer, and the agent were there to see to the execution of a contract already entered into, and not to abrogate it by the substitution of another contract.

The law is well settled that where a corporation, or indeed a private individual, seeks to avail itself of the act of an unauthorized agent, it must accept the burden along with the benefit; and if a contract has been entered into by an unauthorized agent, induced by representations, which he had no authority to make, then if the corporation seeks to have the advantage of that contract, it must make good the representations by which it was procured. *Crump* v. *U. S. Min. Co.*, 7 Gratt. 369; *Owens* v. *Boyd Land Co.*, 95 Va. 560; *Day* v. *Building Assn.*, 96 Va. 484.

But we apprehend that this principle has no application to the case before us. In this case the work has been done. The Dredging Company which made the contract with the alleged agent, and not the principal of such agent, is suing. The question is, was the work done under a written contract, which is the foundation of the whole transaction and of this suit, or was it done under a verbal contract entered into between the plaintiff and an alleged agent of the Lumber Company, which utterly denies the power of the agent? There is no proof of authority in the person with whom the contract is alleged to have been made. Is the Lumber Company estopped to deny the agency? We think not. There is no evidence of any knowledge of the alleged verbal contract on the part of the Lumber Company, and, of course, none of acquiescence in or ratification of it.

The Dredging Company claims it had the right to throw up its contract, and was induced to refrain from exercising it by the acts of the Lumber Company's agents.

Either party to a contract, however solemn its character or binding its form, has the power to violate it, and the courts of law give no redress to him who is injured except compensatory damages, but it is not accurate in law or in morals to say that a

party has a right to break its contract. It would be to assert that it is legally right to do what is legally wrong. A person bound by a contract to do or not to do a thing may find it to his advantage not to keep his engagement, for the obligation may be more onerous than the damages likely to be imposed for its breach, but the violation of the contract cannot be regarded as a contractual right. One party may notify the other party to the contract that he will proceed no further in its execution, and then it is for such party to accept the situation and terminate all relations, sue for the breach, or negotiate other terms for the performance of the duties imposed by the violated contract; and, in the latter alternative, a question arises upon which there is a contrariety of decision. Is a contract to do that which by contract one is already under obligation to do, supported by a lawful consideration? But that question is not before us. We are called upon to decide whether work that has been performed was performed under a valid written contract or under a substituted verbal contract which abrogates the terms of the written contract when the authority of the persons alleged to have acted on behalf of the Lumber Company in making the verbal contract is denied, is unproved, and there is no acquiescence or ratification. Would it be a fraud upon the Dredging Company under the circumstances of this case to permit the Lumber Company to show the truth of the transaction? We think not. The persons with whom the Dredging Company dealt were not held out to it or to the world as having any other duties or powers than to see to the execution of the written contract.

We do not deem it necessary to go into the question whether or not there was any consideration for the verbal contract, for it seems plain that the parol evidence shows that the verbal contract relied upon by the Dredging Company, if made, was entered into with those who had no authority to bind the Lumber Company; and, secondly, that the documentary evidence demonstrates that no such contract was ever entered into.

Another contention on the part of the defendant in error is that, inasmuch as the plaintiff's motion for a new trial did not in terms ask that the verdict be set aside because the damages allowed were too large, this court cannot interfere if it appears that the defendant in error was entitled to any recovery.

We are of opinion that the motion as made is sufficient to enable us to pass upon the *quantum* of damages; and if the damages allowed are substantially in excess of the amount justified by the evidence, the question is properly before us, and it becomes our duty to award a new trial. We use the phrase "substantially in excess of the amount" that ought to be recovered, because there might. be some slight deviations which the court would disregard as coming within the maxim *de minimis non curat lex*. The verdict in this case was not warranted by the evidence, and is much in excess of any proper recovery under the terms of the written contract. Without going into a discussion of the evidence, we shall content ourselves with the statement that it is impossible to reconcile the amount of the verdict by adopting any suggested mode of measuring the material moved, and, allowing for it the contract price of 11¾ cents per cubic yard, and the jury must have been influenced in ascertaining the amount of damages by the testimony before them with respect to a verbal contract. That much seems certain, and we feel constrained upon that account to reverse the judgment, and award a new trial.

*Reversed.*