HAMMOND HOTEL AND IMPROVEMENT COMPANY *v.*
WILLIAMS ET AL.

[No. 14,009. Filed May 15, 1931. Rehearing denied October 30,
1931. Transfer denied January 12, 1933.]

*W. J. Whinery, Earl Rowley* and *Samuel Darrow,* for appellant.

*L. L. Bomberger, Rae M. Royce, Oscar Haney,* and *Bomberger, Peters & Morthland,* for appellees.

LOCKYEAR, C. J.—This is an appeal from a judgment in an action to foreclose a mechanic's lien upon certain real estate in the city of Hammond, Indiana, belonging to the Hammond Hotel and Improvement Company, the appellant herein, wherein Nellie Croak Williams, as administratrix of the estate of John P. Croak, deceased, appellee, was plaintiff in said action.

There was a special finding of facts and conclusions of law stated thereon.

The facts found by the court necessary for a determination of the issues involved in this case are as follows: "On December 31, 1922, said John P. Croak and said defendant, Hammond Hotel and Improvement Company, entered into a written agreement by which said John P. Croak undertook and agreed to do the plumbing and heating work according to plans prepared by one Allan for the defendant, Hammond Hotel and Improvement Company, in the construction of a four story and basement hotel building on the real estate of appellant; that the consideration to be paid by the defendant, Hammond Hotel and Improvement Company, to said John P. Croak for said work was $50,060." That the contract so entered into is set out in the finding of facts. Among the stipulations contained in the contract, we find the following: "It is agreed and understood that while this contract, insofar as the obligation for payment is concerned, lies between the contractor and the owner as designated, the operation shall be under the direction of C. Howard Crane, H. Kenneth Franzheim, architects of Chicago, who are the designated agents of the owner and as hereinafter referred to as the architect, and that all payments and settlements under this contract shall be made by the owner either through the said architect or upon certificate issued by the architect.

"The contractor agrees to provide all the materials and to perform all of the work shown and described on

the drawings and in the specifications prepared by the architect.

"The contractor agrees that the work under this contract shall be completed on or before August 1, 1923, and that if the contractor fails to fully complete this contract on or before September 30, 1923, then and in that event, the contractor further expressly agrees that for each day this contract shall remain uncompleted after September 30, 1923, the owner may deduct the sum of one hundred dollars from the contract price hereinafter specified and retain said sum out of the contract price as payment to the owner by the contractor herein of the liquidated damages sustained by reason of the failure of the contractor to complete this contract on or before the date aforesaid. Provided, however, that if the completion of this contract is delayed by the owner, other contractors employed on the work by the owner, by general strikes, act of God, or casualty, beyond the control of this contractor, then and in such event, the time of completion of this contract shall be extended for such additional time as shall be caused by such delay.

"Provided, always, however, that the contractor herein shall at the time of such delay, if any, demand of the owner in writing such additional time within which to complete the performance of this contract.

"The contractor further expressly agrees that the owner may make any necessary changes in the plans and specifications for the work covered by this contract which may be deemed necessary during the progress of the work, without invalidating this contract. Provided, however, that if any such changes be made, resulting in a reduction of the amount of work and materials required, then a reduction in the contract price hereinafter specified shall be made equal to the actual cost of the labor and materials embraced in any such reduction

plus ten per cent, and provided further, also, that if any such changes be made resulting in additions to the work and materials required, then the actual cost of such added labor and materials plus ten per cent shall be added to the contract price as hereinafter specified.

"The architect shall have general supervision and direction of the work; he is the agent of the owner as provided in the contract documents.

"The superintendent representing the architect is the accredited agent of the owner and the architect, but any orders issued by him for changes in the plans or for extras must, unless otherwise expressly provided, be approved in writing by the architect.

"The owner without invalidating the contract may make changes by altering, adding to or deducting from the work, the contract sum being adjusted accordingly. All such work shall be executed under the conditions of the original contract except that any claim for extension of time caused thereby shall be adjusted at the time of ordering such change.

"If payments are made on valuation of work done, such application shall be submitted at least ten days before each payment falls due.

"The architect may withhold, or on account of subsequently discovered evidence, nullify the whole or part of any certificate for payment to protect the owner from loss on account of (a) defective work not remedied, (b) claims filed or reasonable evidence indicating probable filing of claims, (c) failure of the contractor to make payments properly to subcontractors or for materials or for labor, (d) a reasonable doubt that the contract can be completed for the balance then unpaid.

"Neither the final payment nor any part of the retained percentage shall become due until the contractor, if required, shall deliver to the owner a complete release of all liens arising out of this contract or receipts in full

in lieu thereof and if required in either case, an affidavit that the releases and receipts include all the labor and material for which a lien might. be filed; but the contractor may, if any subcontractor refuses to furnish a release or receipt in full, furnish a bond satisfactory to the owner to indemnify him against any claim by lien or otherwise. If any lien or claim remain unsatisfied after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging such lien or claim, including all costs and a reasonable attorney's fee.

"Contractor's right to stop or terminate contract. If the work should be stopped under an order of any court for a period of three months, through no act or fault of the contractor or of any one employed by him, or if the owner shall fail to pay the contractor within a reasonable time after its maturity and presentation, any sum certified by the architect or awarded by arbitrators, then the contractor may upon three days' written notice to the owner and the architect, stop work or terminate this contract and recover from the owner payment for all work executed and any loss sustained upon any plant or material and reasonable profit and damages.

"In consideration of the foregoing service, the owner agrees to pay the contractor in current funds, for the performance of this contract $50,060, subject to additions and deductions as provided in the general conditions of this contract; and to make payments on account thereof as provided therein and as follows: Payment to be made monthly on the certificate of the architect and on application for payment made by the contractor as provided in Articles 25, 27, 28 and 29 of the general conditions of this contract mentioned as insert No. 2 and forming a part of this contract; which certificates, however, shall in no case exceed 85% of the completed work installed by the contractor at the time of issuing

such certificate, except the final certificate which shall be issued only after the work has been fully completed and accepted.

"It is further expressly agreed between the parties hereto in consideration of the payments hereinabove provided for, and the mutual covenants and agreements of the parties herein, that the contractor agrees to waive and does hereby waive and relinquish all right to a lien upon the real estate hereinabove described and the building to be erected thereon in accordance with the terms of this contract; and the contractor expressly agrees that no lien shall attach to the real estate, building, structure or any other improvement of the owner, either on behalf of the contractor herein, or in behalf of the subcontractors, mechanics, journeymen, laborers, materialmen, or persons performing labor upon or furnishing materials and machinery for such property or improvement of said owner, and the said contractor does hereby expressly waive all right to any such lien under the laws of the State of Indiana for and on behalf of themselves and all other such persons furnishing labor and materials as aforesaid in any form or manner whatsoever for the erection, construction and completion of said building; and it is further agreed that this contract may be filed and recorded in the recorder's office of said Lake County, Indiana, and that the filing and recording of same shall be constructive notice of its contents and of this waiver of said lien to all parties or persons whomsoever."

That said contract was duly acknowledged by the parties thereto before a notary public and recorded in the recorder's office of Lake County, Indiana, within five days after its execution.

From time to time during the progress of the work, the owner ordered additions or extras not covered by the original plans, specifications and contract, which, to-

gether with the items mentioned in finding No. 3, were to the extent and value of $24,800.46, and certain omissions from the original contract were made by mutual consent of the parties of the total value of $1,131.61.

The extra work and additions to the work agreed upon between the said Hammond Hotel and Improvement Company and said John P. Croak, and his successors in estate, over and above the original contract, reasonably required 65 days additional time over and beyond the date of completion required by and agreed upon under the original contract; that it was well known to the owner, the architect and the contractor in April and May, 1923, that said contract could not be completed by September 30, 1923, and during said months said John P. Croak demanded and the architect agreed to additional time for such completion, but fixed no new date therefor; that the parties to said contract never agreed or fixed upon a date for completion of said contract after September 30, 1923. That by reason of the delays incurred by the strike and by reason of the extra and additional work required, and by reason of change of plans mentioned in finding No. 3, said job could not reasonably have been completed by said John P. Croak and his administrator before March 28, 1924.

Shortly after the death of said John P. Croak, on November 27, 1923, First Trust and Savings Bank of Hammond, Indiana, now one of the defendants herein, as trustee under a mortgage executed by the defendant, Hammond Hotel and Improvement Co., was appointed administrator of the estate of said John P. Croak and carried on the work of said hotel building after the death of said John P. Croak; that after the completion of the work, the said First Trust and Savings Bank resigned as such administrator and the plaintiff herein was appointed and qualified in its stead, and has ever since acted as administratrix of said estate.

About February 15, 1924, the said administrator filed with the architect an estimate asking for an architect's certificate for another payment of $21,055.43, being the administrator's estimate of the fair value of the work and material added since the estimate of January 14, 1924. This estimate was delivered to the architect's superintendent in accordance with the custom adopted with all previous estimates as stated in finding No. 6 and said superintendent, in accordance with his custom, delivered the same to W. J. Whinery, as secretary and representative of the owner. The estimate was fair and reasonable and was not objected to on account of its contents or amount, but said superintendent by and at the direction of the owner refused to consider and approve said estimate and the architect against his own judgment but at the direction of the owner refused to issue a certificate on account of said estimate for any amount whatsoever. On February 20, 1924, the architect informed the attorney of the estate that under orders of the owner, he would honor no more requests for and issue no more certificates to the estate of John P. Croak, subsequent to the certificate of January 22, 1924, until the job was finished and gave no other reason therefor than the instructions of the owner. Said architect was then and there informed by said attorney, that he treated that attitude on the part of the owner and architect as a breach of the contract.

That on February 25, 1924, the attorney for the estate advised the defendant owner of the action of the architect in refusing a certificate on the estimate of February 15, 1924, and of the reason given by the architect for such refusal, but the said owner took no action thereon and no steps to have said estimate of February 15, 1924, considered or passed upon by the architect and on February 28, 1924, the attorney for the estate advised the owner in writing that the refusal of the owner and the

architect to honor the estimate and request for certificate made by the estate on February 15, 1924, was treated by the estate as a breach of contract on the part of the owner; that the estate would proceed to complete the work merely as a matter of mitigation of its damages and such completion was not to be construed as a waiver of the breach or of the right of the estate to take every advantage thereof; that at said time the installation of plumbing fixtures in the building was not completed, a large number of radiators were temporarily connected and it was necessary to detach them and make permanent connections thereto and numerous items were yet unfinished, all of which the estate proceeded to do and did do after the written notice of February 28, 1924, as aforesaid. The owner made no objections to the completion of this work after the receipt of said notice, and no comment or reply to the estate on the position of the estate stated in said written notice that it would finish the work in mitigation of its damages, but on the other hand in reply thereto demanded that the estate finish the job, and stated that when the job was finished, the estate would be paid whatever sum was due, and the work was thereafter finished and accepted by the owner.

The work was practically completed by the estate on March 28, 1924, except that about May 5, 1924, it was discovered that a certain water pipe installed by the estate was defective and at the request and under the direction of the architect, this pipe was removed and replaced by sound pipe, and this was the last work done by or on behalf of the estate on the building.

The finding sets out the facts concerning the filing and recording of a notice of intention to hold a mechanic's lien.

The court found further: During the progress of the work the defendant, Hammond Hotel and Improve-

ment Co., had paid the total sum of $51,297.50 to said John P. Croak or his estate on account of said plumbing, heating, ventilating; that a reasonable value of the work done, including the labor, cost of furnishing temporary heat, the court finds to be $73,728.85, which does not exceed the amount agreed upon by the owner and contractor to be paid for such work, labor, material, against which the defendant Hammond Hotel and Improvement Company is entitled to a credit for cash paid of $51,-297.50, and $541.10 by setoff, making the total sum of $51,838.60, leaving a balance now unpaid in favor of the plaintiff $21,890.25; that there has been a long and unreasonable delay in the payment thereof since May 15, 1924; that the interest accrued thereon to the date hereof is $7,333.23.

That the plaintiff has been compelled to employ attorneys to prosecute this action and a reasonable attorney's fees for plaintiff's attorneys in the prosecution of this action and the foreclosure of her mechanic's lien is $4,500.

Upon the facts found the court stated the following conclusions of law:

1. The defendant, the Hammond Hotel and Improvement Company, waived the date of completion fixed by the original contract with John P. Croak and strict performance as to time.

2. The contract of December 31, 1922, between John P. Croak and Hammond Hotel and Improvement Company continued in force, except as to time of completion, to February 15, 1924.

3. First Trust and Savings Bank, as administrator of the estate of John P. Croak, was entitled to consideration by the architect of the estimate filed by the estate with him on February 15, 1924, and to a certificate for the amount found by him to be payable at that time.

4. The action of the architect and owner in refusing

to consider the estimate filed by the administrator on February 15, 1924, and refusing to certify or pay any amount on account of said estate was unreasonable, and not justified, and constituted a breach by the owner of the contract of December 31, 1922.

5. The administrator of the estate of John P. Croak, deceased, did not waive the breach of contract by the owner by completing the plumbing, heating and ventilating work in the hotel building after the breach of said contract by the owner.

6. The covenant of said John P. Croak against mechanic's liens on the property of the owner was dependent upon the covenant of the owner to perform its part of the contract as the work progressed and by reason of the owner's breach of contract set forth in the fourth conclusion of law, the administrator and the estate of the said John P. Croak, deceased, were released from the covenant against mechanic's liens contained in said contract.

7. The defendant, Hammond Hotel and Improvement Company, is entitled to setoff against the amount due the plaintiff in the sum of $541.10.

8. The law is with the plaintiff and she is entitled to recover of the defendant, Hammond Hotel and Improvement Company, as the balance now unpaid of the reasonable value of work done and materials furnished, not exceeding the contract price and after allowing the setoff mentioned in the seventh conclusion of law, the sum of $21,890.25, plus $7,333.23 interest and $4,500 attorney's fees, making a total of $33,723.48, and that said amount is secured by the mechanic's lien of the plaintiff, notice of intention to claim which was duly filed as designated in finding No. 14 against real estate described herein.

9. The plaintiff is not liable to the defendant, Hammond Hotel and Improvement Company, for liquidated damages demanded in its counter-claim or cross-complaint.

10.   The mortgage lien of the defendant, First Trust and Savings Bank as trustee, is junior and subject to the lien of the plaintiff under her mechanic's lien, and in the amount thereof set forth in conclusion of law No. 8.

11.   The plaintiff is entitled to foreclosure of her mechanic's lien in the amount set forth in conclusion of law No. 8 against the defendants, Hammond Hotel and Improvement Company and First Trust and Savings Bank as trustee, upon the real estate and improvements thereon, described in finding No. 1 and in the third amended complaint, and to have said real estate and improvements sold by the sheriff of Lake County, Indiana, as lands are sold on execution to satisfy said lien.

12.   Plaintiff is entitled to recover all her costs of and from the defendant, Hammond Hotel and Improvement Company.

To each of which conclusions of law stated by the court on the special finding of facts the appellant separately and severally excepted, and assign as error the conclusions of law separately and severally from one to twelve inclusive, upon the special finding of facts.

The case was tried on the third amended complaint filed by the appellee.

The appellee's third amended complaint was in one paragraph and sought to recover personal judgment against the appellant hotel company, and also sought to foreclose a mechanic's lien upon its real estate.

Said third amended complaint set forth as a part thereof as exhibit (A) a copy of the written contract between the appellant and John P. Croak, deceased.

The contract provided that no mechanic's lien shall attach to the real estate either on behalf of the contractor or in behalf of subcontractors, materialmen, or laborers. That by the provisions of the contract the contractor expressly waived and relinquished all claims

upon the real estate of the appellant company for any such labor, material or work furnished by him.

That no change shall be made only upon written instructions of the architects before any such work or change shall be made.

The contract was entered into December 31, 1922, and provided that the work under said contract should be completed on or before August 1, 1923, and that if the contractor failed to fully complete said contract on or before September 30, 1923, then and in that event, the contractor expressly agreed that for each day the contract remained uncompleted after September 30, 1923, that the owner might deduct the sum of $100 per day from the contract price and retain said sum out of the contract price as payment to the owner by the contractor of liquidated damages sustained by reason of such failure of the contractor to complete the work within said time.

Provision was made in the contract that if the contractor was delayed by the owner, he should demand of the owner at that time, in writing, such additional time covering the delay within which to complete the performance of the contract; and in the event of changes or additions to the work, which were only to be made on written directions of the architect, the additional time, if any, should be determined and made a part of the written order for such additional work, if any, and no claim for delay should be made except in writing.

It is further expressly provided in the contract, that if the contractor claimed that any instructions, drawings, or otherwise involved extra cost under the contract, he should give the architect written notice thereof, before proceeding to execute the work, and that no claims should be valid unless so made.

The contract further provided that the contractor should make application for payments to the architect,

and that the architect should issue a certificate to the contractor for such amount as he decided to be properly due; that the architect might withhold, for certain specified reasons, including a reasonable doubt that the contract could then be completed for the balance then unpaid, any certificate for payment. That payments were to be made monthly on certificate of the architect in accordance with the provisions of the contract, the certificate in no case to exceed 85% of the completed work installed by the contractor at the time of issuing such certificate, except the final certificate.

By her third amended complaint, the appellee, Nellie Croak Williams, etc., sought to recover, (1) an alleged balance due her under the contract; and also (2) in the same paragraph of complaint, the same being only in one paragraph as aforesaid to recover for alleged "certain other and extra work" furnished and "not provided for in said contract" as set forth in the statement marked exhibit "B" attached to and made a part of said third amended complaint.

The appellant filed an answer to the third amended complaint in six paragraphs, the first of which was a general denial, and the five affirmative paragraphs of answer, and it also filed a counter-claim and a setoff.

These affirmative paragraphs of answer, counter-claim, and setoff are based upon special clause in the contract above set out, provided against payment for any extras unless the same was done in conformity with the terms and conditions of the contract and the clause stating the damages for failure to complete the contract by a given date.

As stated above, the court found against the appellants on the counter-claim and setoff and for the appellee upon the complaint. Upon examination of the evidence we are satisfied that there is sufficient evidence for the court to find that the extra work done by the appellee

was acquiesced in and agreed to and accepted by the appellant and that there is due and owing the principal sum and interest as found by the court in the special finding of facts.

Burns 1926, Sec. 9831, provides, inter alia: "No provision or stipulation in the contract of the owner and principal contractor that no lien shall attach to the real estate, building, structure or any other improvement of the owner shall be valid against subcontractors, journeymen, mechanics, laborers or persons performing labor upon or furnishing materials or machinery for such property or improvement of the owner unless the contract containing such provision or stipulation shall be in writing, and shall be acknowledged as provided in case of deeds and filed and recorded in the recorder's office of the county in which such real estate, building, structure or other improvement is situated, not more than five days after the execution of such contract."

This section applies to subcontractors, mechanics, journeymen, laborers, etc., and does not invalidate a waiver of the lien on the part of the original contractor even though it is not recorded.

It has been held by both the Supreme and Appellate Courts of this state that a contractor may waive the right of himself and those claiming under him to the lien given by statute where the statute imposes no restriction on his right and he does so by expressly agreeing that no liens shall be filed or by entering into an agreement which otherwise clearly shows by the language used that such was the intention of the parties. *Kokomo, Frankfort and Western Traction Co.* v. *Kokomo Trust Co.* (1923), 193 Ind. 219, 137 N. E. 763; *Baldwin Locomotive Works* v. *Hines* (1919), 189 Ind. 189, 125 N. E. 400; *Masson* v. *Ind. Lighting Fixture Co.* (1913), 53 Ind. App. 376, 380, 100 N. E. 875, 101 N. E. 753.

In the case of *Van Dyck Heating Co.* v. *Central Iowa Building Co.* (1925), 200 Iowa 1003, 205 N. W. 650, 651, the plumbing contractor had signed a contract waiving all liens. The court said a mechanic's lien is wholly a creature of the statute and there is no reason why it cannot be waived, citing a long list of cases in support thereof.

The provisions in a building contract that final payment shall be made upon satisfactory proof that all liens against the building have been paid or discharged makes payment of such liens a condition precedent to the recovery of final payment. *Butterick Lumber Co.* v. *Collins* (1909), 203 Mass. 413, 89 N. E. 138; *Cortis Erickson* v. *Brandon* (1884), 53 Mich. 10, 55 N. W. 62; *John* v. *Mortgage Trust and Sav. Bank* (1917), 97 Wash. 504, 166 Pac. 1137; see Am. St. Rep. 626, 19 L. R. A. 456.

Where the right to a mechanic's lien is absolutely waived by the contract, the binding effect of such waiver is not defeated by the owner's failure to comply with his own independent covenants and agreements. *Pinning* v. *Skipper* (1889), 71 Md. 347, 18 Atl. 659; *Trustees of German Lutheran, etc.,* v. *Heise* (1876), 44 Md. 453; *Sanders Pressed Brick Co.* v. *Barr* (1898), 76 Mo. App. 380; *Long* v. *Caffrey* (1880), 93 Pa. 526; *Brzezinski* v. *Neeves* (1896), 93 Wis. 567, 67 N. W. 1125. See and compare *Kertscher* v. *Green* (1912), 205 N. Y. 522, 99 N. E. 146, Ann. Cases 1913E, 561; *Pacific Lumber Co.* v. *Dailey* (1910), 60 Wash. 566, 111 Pac. 869. May waive liens by contract. See *Sprague* v. *Provident Sav. & Trust Co.* (1908), 163 Fed. 449, 90 C. C. A. 71; *Kokomo Tract. Co.* v. *Kokomo Trust Co.* (1923), 193 Ind. 219, 137 N. E. 763; *Baldwin Locomotive Works* v. *Hines Lumber Co.* (1919), 189 Ind. 189, 116 N. E. 739.

It is the law that a right to a lien, once waived, may

not, in the absence of express agreement to that effect with the owner, be afterwards revived.

Such a release covers not only all right of lien then existing, but any that may thereafter accrue to the party granting the release by reason of his further furnishing material or labor on the same building. *Whitmer* v. *Arthur* (1921), 23 Ohio Nisi Pruis Courts 481, p. 485; *Center Creek Mining Co.* v. *Coyne* (1912), 164 Mo. App. 492, 147 S. W. 148; *Matthews* v. *Young* (1896), 16 Misc. Rep. 525, 40 N. Y. Supp. 26; *Gray* v. *Jones* (1906), 47 Ore. 40, 81 Pac. 813; *Hobkirk* v. *Baseball Club* (1904), 44 Ore. 605, 76 Pac. 776; Phillips on Mechanics' Liens, Sec. 472.

The covenant waiving a mechanic's lien cannot depend upon the owner's agreement to pay because there could not be a lien in any event if the owner made the payments according to the contract.

The law gives a lien when there is a failure to pay, and if the contractor waives his lien then it must follow that it is waived in the event there is a failure on the part of the owner to make the payment. In the case of *Cummings* v. *Broadway-94th St. Realty Co.* (1922), 233 N. Y. 407, 135 N. E. 832, the court held that the agreement not to file a lien is not rendered ineffectual by reason of the fact that the owner had failed to pay the amount due under the contract. *Pinning* v. *Skipper* (1889), 71 Md. 347, 18 Atl. 659; *Trustees of German Lutheran, etc.,* v. *Heise* (1876), 44 Md. 453; *Sanders Pressed Brick Co.* v. *Barr* (1898), 76 Mo. App. 380; *Long* v. *Caffrey* (1880), 93 Pa. 526; *Brzezinski* v. *Neeves* (1896), 93 Wis. 567, 67 N. W. 1125.

If a property owner refuses to make payments to the contractor in installments as required by the terms of the contract the contractor may treat such refusal as a discharge and maintain an action at once to re-

cover damages. Paige on Contracts 2911; *Knott* v. *Clark Const. Co.* (1918), 249 Fed. 181; *Chicago* v. *Sexton* (1885), 115 Ill. 230, 2 N. E. 263; *Schulte* v. *Hennessy* (1875), 40 Ia. 352; *Rowland Lumber Co.* v. *Ross* (1902), 100 Va. 275, 40 S. E. 922.

Contractor recovers at the contract rate for what has been performed. *Howard County* v. *Pesha* (1919) (Neb.), 172 N. W. 55.

In the case of *Collinsville Mfg. Co.* v. *Street et al.*, Court of Civil Appeals of Texas (1917), 196 S. W. 284, p. 286, the court said:

"The only question in this appeal was as to the action of the court in denying appellant a foreclosure of a mechanic's lien on the property on which it worked. Appellant's position is that the contract was breached by the failure of the Jones Company to pay it the monthly estimates of the amount due on its contract and by the direction to quit work, and that it thereupon had the right to treat the contract as rescinded and recover on quantum meruit for the value of the material and labor furnished, and in such a suit the party breaching the contract could have no benefit of any of its provisions and hence it could not be set up to defeat the lien which the law gave appellant. In the consideration of the question it is first necessary to decide as to the effect on the contract of the acts of the parties as above set forth. There was never any express declaration on the part of the Collinsville Co. that it elected to rescind the contract by reason of the acts which it alleged constituted breach thereof. If the failure to pay an installment when due, or the direction to cease work temporarily, constituted such a breach as would authorize appellant to terminate the contract, it could waive this right if it saw fit to do so. All of appellant's actions prior to the appointment of a receiver were inconsistent with a determination on its part to terminate

the contract; for when the embarrassment of the Jones Company was made known to it, and said company advised appellant to quit work until it became known what would be the outcome of the matter, appellant acquiesced in this suggestion, so that we do not think that it can be concluded that the contract was then and there considered as being at an end by either party to it. . . .

"No itemized statement of such material and labor, and the value thereof, independent of the contract, was contained in the pleading or proof of the Collinsville Co., but the recovery was based on compensation fixed by the contract. The court below made no express finding as to whether the contract was breached by the Jones Company and rescinded on such account by the Collinsville Co., and under the facts stated we do not think that the appellant may properly treat the recovery herein as being on the quantum meruit.

"But, even if the contract had been treated by appellant as being breached and ended, and he had proceeded to recover strictly on the quantum meruit, we are inclined to think it still would not be entitled to a mechanic's lien on the property of the Southern Methodist University. It is true that, when full performance of a contract is prevented by the wrongful act of one of the parties after partial performance by the other, the party not in default may either sue on the contract or proceed as if there had been no contract and recover the reasonable value of the service performed. *Hearne* v. *Garrett* (1878), 49 Tex. 619; *Davidson* v. *Laughlin* (1903), 138 Cal. 320, 71 Pac. 345, 5 L. R. A. (N. S.) 584, note; 5 Corpus Juris, 1388. But we doubt whether these principles can properly be applied to the situation created by the facts in this case. The existence of a mechanic's lien relates to the time of the furnishing of the material or doing the work. While the law provides

for the filing of the contract under which the material was furnished and the work done, or, in the absence of a contract, an itemized statement of the account, within a stated period after the indebtedness shall have accrued (R. S., §5622), such compliance with the law merely fixes the lien which was created by law at the time the material and labor went into the improvement, and the lien relates back to such time. *Trammell* v. *Mount* (1887), 68 Tex. 210, 4 S. W. 377, 2 Am. St. Rep. 479; *Keating Imp. & Mach. Co.* v. *Marshall Elec. Co.* (1889), 74 Tex. 605, 12 S. W. 489; *Warner Elevator Co.* v. *Maverick* (1895), 88 Tex. 489, 30 S. W. 437, 31 S. W. 353, 499. Now, at the time the material was furnished and the work done by appellant, it was proceeding under a contract which the article of the statute above referred to contemplated it would file, and which expressly waived the lien. Therefore no lien was created on the property of the appellee Southern Methodist University at such time. Any lien on said property created by transactions between the Jones company and the Collinsville company, in order to have any validity, must necessarily be a creature of law, as such parties could not, by agreement, create a lien on the property of a third person. It seems to us that, if at the time the material and labor is put into the building no lien exists, then no subsequent acts of third parties could thereafter create such a lien."

The authorities are numerous to the effect that a mechanic's lien may be waived. *Pope* v. *Graham* (1875), 44 Tex. 196, 27 Cyc. 261; Jones on Liens, 1500; Rockwell on Mechanic's Liens, 173. And there are also authorities holding that if the lien is once waived it cannot be revived. 27 Cyc. 266; *Center Creek Mining Co.* v. *Coyne* (1912), 164 Mo. App. 492, 147 S. W. 148; *Matthews* v. *Young* (1896), 16 Misc. Rep. 525, 40 N. Y. Supp. 26; *Gray* v. *Jones* (1906), 47 Ore. 40, 81 Pac. 813.

Beyond any doubt the parties to this action worked under the contract up and until February 15 or 25, 1924.

The bill of particulars enumerates the items, and shows the work was done pursuant to the contract with exception of a few items.

The court states as a conclusion of law that the work under the contract continued up to February 15, 1924.

There can be no question that a lien was waived as to all work done under the contract.

The bill of particulars filed shows that after February only $1,618.47 worth of labor and material was furnished; therefore, the court erred in foreclosing a lien for $33,723.48, costs and attorneys' fees, because that amount includes the amount due under the contract.

In the light of the law as announced in the decided cases, cited in this opinion, the right to a lien having been waived in the first instance by contract which was recorded, we hold that whatever was done by the appellee was done in compliance with the terms of the contract as to liens. The entire contract was never absolutely set aside by the parties. After the appellee notified the appellant that the contract had been breached, the appellee went on and did the work according to the plans and specifications stipulated in the contract. The court is in error when it holds that the mortgage lien of the First Trust and Savings Bank as trustee is junior and subject to the lien of the appellee under a mechanic's lien.

There is evidence to support the finding as to the breach of the contract in February, 1924; by failing to make a payment then due, but as we have seen that does not revive the waiver of the lien.

It necessarily follows that whereas since the appellee is not entitled to foreclose a mechanic's lien against

the property of appellant, the appellee is not ■ entitled to recover any attorneys' fees in this action.

We are of the opinion that justice may be had without granting a new trial herein; therefore, the judgment is reversed with instructions to the court to re- ■ state its conclusions of law in harmony with this opinion and render judgment accordingly.

Curtis, J., not participating.

## ON PETITION FOR REHEARING.

LOCKYEAR, J.—Both the appellant and the appellees herein have filed petitions for rehearing.

We agree with the appellee that there must be an end to litigation and that the decision by this court rendered narrows the field of controversy to the one question: Is the appellee, Williams, entitled to a lien? If she is not, no good purpose could be served by a retrial of this case.

As was said in the case of *Van Dyck Heating and Plumbing Co.* v. *Central Iowa Bldg. Co.* (1925), 200 Iowa 1003, 205 N. W. 650, 651: "A mechanic's ■ lien is a right or privilege given to a contractor to protect himself against loss for material and labor furnished. It is wholly a creature of statute. We know of no reason, and none has been urged, which would prevent the contractor waiving such a lien by contract so as to be binding in a contest between the property owner and the original contractor."

In the case of *Pinning* v. *Skipper* (1889), 71 Md. 347, 18 Atl. 659, 660, it was held that a waiver is not avoided by the owner's breach of the contract on the ■ part of the owner. That opinion goes on to say: "If a party expressly contracts that he will not do a certain thing, or will not set up a certain claim against the other contracting party or his property by resort to a certain process, it seems to us a legal anomaly

to say he can go on and do the thing, or avail himself of the forbidden process, because he has grievance against such other party on some other ground, or a claim which he can enforce against him by a different suit or process."

Speaking generally on the subject of waiver, 40 C. J. 313: "The principle that a person of full age and acting suijuris can waive a statutory or even a constitutional provision in his own favor, affecting simply his property and alienable rights and not involving consideration of public policy, applies to mechanic's liens, and when the lien has been once waived it cannot afterward be revived in the absénce of an express agreement to that effect with the owner," citing the following authorities: *Blakeley* v. *Moshier* (1892), 94 Mich. 299, 54 N. W. 54; *Au Sable River Boom Co.* v. *Sanborn* (1877), 36 Mich. 358; *Center Creek Mining Co.* v. *Coyne* (1912), 164 Mo. App. 492, 147 S. W. 148; *Whitmer* v. *Arthur* (1921), 23 Ohio N. P. (N. S.) 481; *Collinsville Mfg. Co.* v. *Street* (1917) (Tex. Civ. App.), 196 S. W. 284, 287 (cit. Cyc.).

The case of *Cummings* v. *Broadway-94th St. Realty Co., Inc., et al.,* from the Court of Appeals of New York (1922), reported in 233 N. Y. 407, 135 N. E. 832, 833, held where a contractor performing work or furnishing materials in the construction of a building had expressly agreed not to do so, he had no right to file a notice of a lien. In speaking of a condition similar to the contention of the appellees in this case and criticising the case of *Kertscher & Co.* v. *Green* (1912), 205 N. Y. 522, 99 N. E. 146, Ann. Cas. 1913E, 561, upon which appellees rely, and also of an authority of *Greenfield* v. *Brody* (1912), 204 N. Y. 659, 97 N. E. 1105, the court in the case of *Cummings* v. *Broadway, etc., supra,* speaking of the other two cases, which appear to be in

some conflict, says: "The decision was placed upon the provisions of the contract there involved, the court reaching the conclusion that the agreement not to permit liens to be filed referred only to liens filed against the contractor by workmen, subcontractors or materialmen," but in the case where the question before us is met, the court says: "No good reason can be suggested, however, why a contractor cannot, for a valuable consideration, waive the provisions to the statute giving him the right to file notice of lien." And further, "The doctrine of the Kertscher case ought not be extended, but should be confined to what was there decided." And in that case, as in this case, it was held that the contractor was entitled to a personal judgment, but not the right to hold a lien.

For us to hold otherwise than was held in the original opinion and say that the failure of the owner of a piece of property to carry out his part of the contract would revive a lien would be to hold that there could be no waiver of a lien. If the contractor fulfilled his part of the contract and made the payments as agreed, no right to a lien would exist in the first place, so that when a contractor waives his right to a lien he thereby agrees to rely upon his right to obtain a judgment at common law under the contract in case the owner of the property defaults.

The petitions of the appellant and the appellees for rehearing are each denied.

Curtis, J., not participating.